OPINION
This is an appeal from the Lake County Court of Common Pleas. Appellant, Margaret M. Bolt, a.k.a. Peggy Bolt, appeals her conviction and sentence.
On October 28, 1996, the Lake County Grand Jury indicted appellant, in case number 96-CR-000504, on five counts: count one, felonious assault, with a firearm specification, a felony of the second degree, in violation of R.C. 2903.11; count two, attempted murder, with a firearm specification, a felony of the first degree, in violation of R.C. 2923.02; count three, conspiracy to commit murder, with a firearm specification, a felony of the first degree, in violation of R.C. 2923.01; count four, possession of cocaine, a felony of the fourth degree, in violation of R.C.2925.11; and count five, aggravated possession of drugs, a felony of the fifth degree, in violation of R.C. 2925.11. On November 1, 1996, at the arraignment, appellant entered a plea of "not guilty" to all charges. On November 21, 1996, appellant filed a motion to suppress the oral and written statements she made to the Willoughby police. After a hearing, the trial court denied appellant's motion to suppress on February 18, 1997.
On July 14, 1997, appellee, the state of Ohio, filed a motion to amend the indictment in case number 96-CR-000504. After appellant submitted a motion in opposition to that motion, appellee withdrew the motion to amend. Thereafter, on August 19, 1997, appellant was re-indicted in case number 97-CR-000370. After an error was discovered, appellee asked to amend the indictment, but its request was denied. Subsequently, appellant was re-indicted for a third time in case number 97-CR-000404 on September 12, 1997. In that indictment, appellant was charged with: (1) attempted murder, with a firearm specification, a felony of the first degree, in violation of R.C. 2923.02; (2) felonious assault, with a firearm specification, a felony of the second degree, in violation of R.C. 2903.11; and (3) conspiracy to commit murder, with a firearm specification, a felony of the first degree, in violation of R.C. 2923.01.
On July 29, 1997, appellant filed a motion to suppress any and all physical evidence including the drugs found in her apartment. She also submitted another motion to suppress the videotaped statement and any oral and written statements that she made to the Willoughby Police Department because she did not knowingly and voluntarily waive her Miranda rights. Additionally, on August 12, 1997, appellant filed a motion to suppress statements that she made to Mentor police detectives.
On September 30, 1997, appellant requested that the trial court dismiss the action against her because the indictment failed to allege essential elements of the conspiracy charge. Appellant asserted that when appellee amended the indictment, the second indictment resulted in new charges filed against her, and further, the cocaine count was changed. Appellee submitted a response to appellant's motion to dismiss on October 7, 1997. Appellee also filed a motion to consolidate case nos. 96-CR-000504 and 97-CR-000404 on October 8, 1997.
In a judgment entry dated January 26, 1998, the trial court consolidated the cases. In that entry, the trial court also ordered that appellee dismiss case no. 97-CR-000370. Additionally, the trial court overruled appellant's motion to dismiss the cases. In a separate judgment entry dated January 26, 1998, the trial court addressed appellant's motions to suppress. The trial court overruled her motion to suppress the oral and written statements she made to the Willoughby Police Department. Her motion to suppress the statements she made to the Mentor detectives was granted in part and overruled in part.[1] Lastly, appellant's motion to suppress the cocaine found in her apartment was granted.
On February 3, 1998, appellant filed a motion to dismiss alleging that, if the case proceeded, her constitutional right to a speedy trial would be violated. That motion was overruled and a jury trial commenced on February 3, 1998.
The facts reveal that on September 17, 1996, appellant telephoned 9-1-1 after a shooting occurred in her apartment to request police assistance and an ambulance. Sergeant David Huetter ("Sergeant Huetter") and Patrolman John Begovic ("Officer Begovic") of the Willoughby Police Department were dispatched to appellant's residence. Sergeant Huetter testified that when they arrived at the scene and entered the apartment, he saw appellant holding a gun, Leo McMillan ("McMillan") on the floor with a gunshot wound, and a knife on the floor. He also saw Derek Moss ("Moss") near the back door of the apartment.
Officer Begovic's testimony revealed that he questioned appellant as to what occurred that evening. She revealed that while she was asleep on a couch in the living room, McMillan, who opened her door and stood before her with a knife in his hand, awakened her. He told appellant he was going to kill her. Thereafter, she yelled for Moss, who was in another room. Moss ran into the living room with a gun in his hand. As McMillan headed towards Moss, Moss shot him once in the hip area and he fell to the ground. As McMillan attempted to get up, a fight ensued. During the brawl, appellant obtained possession of the revolver.
McMillan testified that a short time after he met appellant, he began dating her. McMillan stated that after he ended the relationship, appellant became obsessive. As a result of her obsession, he filed a complaint for harassment against her. On September 12, 1996, McMillan recalled that appellant and three of her friends went to his apartment and began harassing him. The police were called; however, McMillan was arrested because of an assault charge appellant filed against him on July 4, 1996. A few days later, McMillan contacted appellant to request that she dismiss the charge against him because it was false. As a result of their conversation, they met on September 16, 1996. Appellant told McMillan that she would not dismiss the complaint against him unless he agreed to have sex with her one more time. After the consensual sexual encounter, the two of them agreed to meet to resolve the complaint.
The following day, McMillan went to pick appellant up at her apartment. When he arrived at the apartment, he indicated that Moss was upset with him for "messing with [his] woman" and raping her. After unsuccessfully trying to calm Moss down and denying the rape, McMillan attempted to "run out the door." Moss shot him in the thigh and when McMillan fell to the ground, Moss began kicking and hitting him. McMillan admitted removing a knife from his pocket, but he was unable to unlock the blade because Moss was beating him. Ultimately, Moss kicked the knife out of his hand. McMillan heard a second shot, but was unsure who fired it.
Following McMillan's testimony, Moss was called to the stand. He related that he was sentenced to six years as a result of pleading guilty to charges from the September 17, 1996 incident. Moss revealed that he moved in with appellant shortly after they met. He heard about appellant's relationship with McMillan on a daily basis. He also stated that she followed McMillan. Moss overheard appellant tell one of her friends that "[she] finally got the M.F., he's behind bars where he belongs." On September 16, 1996, Moss explained that appellant told him she was dropping some clothes off to her son. When she returned, she was upset and indicated that appellant had raped her. Although Moss and appellant were not dating, they occasionally had sex and appellant's claim that McMillan had raped her enraged Moss. Subsequently, at appellant's request, Moss took her to the hospital. Before entering the hospital, appellant asked Moss to beat her up to make it look as though she had been attacked, but Moss refused.
When they arrived home, Moss indicated that appellant "was upset and frustrated * * * and she * * * want[ed] to get that m. f.-er [McMillan]." She discussed several ways of disposing of McMillan. Moss suggested that he, instead of appellant, would shoot McMillan because McMillan could overpower her. Moss explained that he was going to shoot McMillan in the leg and appellant stated that she would kill him. She discussed her plan with Moss for approximately forty-five minutes. The next morning, appellant woke Moss up, gave him the gun, and said, "it's show time."
When McMillan arrived at the apartment, appellant screamed for Moss. He ran out of his room with the gun and began cursing at McMillan for having the audacity to go to appellant's home after raping her. Moss pointed the gun at McMillan and saw that McMillan was holding a knife. Moss explained that he was very angry with McMillan. The argument escalated and Moss shot McMillan in the thigh. McMillan "[h]it the ground." Moss revealed that he initially only wanted to kick the knife out of McMillan's hand, but he continued to beat him. At some point during the beating, Moss passed the gun to appellant. While they were waiting for the police to arrive, Moss told appellant that he did not want to go to prison. Appellant informed Moss that there was nothing to worry about, she had "it all taken care of."
Detective Kenneth Schmitt ("Detective Schmitt") of the Willoughby Police Department testified that he transported appellant to the police station following the September 17, 1996 incident. Detective Schmitt indicated that while appellant was in his cruiser, he did not initiate a conversation with her. She began telling him about the events that transpired on September 17, 1996. After arriving at the station, Detective Schmitt placed her in an interview room and asked her to write down what had occurred. Detective Schmitt left the room to take a phone call. A bit later, appellant exited the room and announced that she thought she shot McMillan. Thereafter, Detective Schmitt told appellant to return to the interview room and he summoned Chief Conrad Straube ("Chief Straube"). Subsequently, he re-entered the room and gave appellant a voluntary statement form and read her a waiver of her rights.
Chief Straube related that when he entered the interview room, Detective Schmitt was asking appellant if she understood her rights and he was also handing her a paper that contained her written Miranda rights. Chief Straube indicated that the initial interview, which lasted about one hour, was video recorded. He further testified that he conducted a second recorded interview with appellant, which lasted about an hour.
Patrolman Ken Zbiegien ("Officer Zbiegien") from the Mentor Police Department testified that he was dispatched to the hospital on the evening of September 16, 1996, to meet with appellant regarding a rape. During Officer Zbiegien's interview with appellant, she told him that McMillan choked and raped her. She also gave him a detailed account of her version of what happened on September 16, 1996. Appellant claimed that McMillan contacted her on her cellular phone and told her to meet him. He mentioned to appellant that he had her son and that he wanted her to drop the assault charges she filed against him. Appellant and McMillan headed to the police station to dismiss the charges, but they were informed that the courts had to handle the matter. After they left the police station, appellant asked McMillan about her son. Thereafter, she informed Officer Zbiegien that McMillan began choking her. As a result, she blacked out. When she regained consciousness, her left shoe, the left side of her pants, and her panties were removed. Officer Zbiegien examined appellant and noticed some bruising on the inside of her leg, but did not see any marks on her neck.
Detective John Gregory Knack ("Detective Knack") of the Willoughby Police Department testified that he was dispatched to appellant's apartment on September 17, 1996, to gather evidence from the scene. When Detective Knack returned to the police station, he interviewed Moss and appellant. Appellant told Detective Knack that McMillan had broken into her apartment and was standing before her with a knife. Later in the interview, she claimed that she and Moss planned to shoot McMillan. Appellant stated that McMillan knocked on the door so she let him into the apartment. She did not feel threatened by McMillan. Appellant also explained that he was carrying the knife to protect himself from one of her boyfriends. Detective Knack averred that he advised appellant of her right to an attorney.
Detective Timothy Kerzisnik ("Detective Kerzisnik") of the Willoughby Police Department was called to the stand. He related that his interview with appellant was recorded and transcribed. Appellant told Detective Kerzisnik that the second shot that was fired was an accident. She mentioned that McMillan did not say he was going to kill her, but he was carrying a knife.
At the conclusion of appellee's case-in-chief, appellant moved for a judgment of acquittal pursuant to Crim.R. 29, which the trial court overruled. Appellant presented no testimony, but renewed her Crim.R. 29 motion, which was overruled.
On February 13, 1998, appellant was found guilty of attempted murder with a firearm specification, felonious assault with a firearm specification, and conspiracy to commit murder with a firearm specification. The matter was referred to the Adult Probation Department of the Lake County Court of Common Pleas for a presentence investigation and victim impact statement. On February 23, 1998, appellant filed a motion for a new trial and also submitted a motion to set aside the verdict and enter a judgment of acquittal, which the trial court overruled on March 17, 1998.
On March 3, 1998, appellant was sentenced to serve a definite term of eight years in prison, with sixty-one days credit for time already served. Additionally, for the firearm specification, appellant was ordered to serve an additional mandatory sentence of three years prior to and consecutive to the eight-year prison term. Appellant timely filed the instant appeal and now asserts the following assignments of error:
 "[1.] The trial court erred, as a matter of law, by denying [appellant's] motion to dismiss based upon a speedy trial violation.
 "[2.] The trial court committed reversible error by denying [appellant's] motion to suppress the videotaped and written statements by [appellant] because her request for an attorney was denied.
 "[3.] The trial court committed reversible error by denying [appellant's] motion to suppress the videotaped and written statements by [appellant] because her waiver of [Miranda] rights was not knowingly, intelligently or voluntarily made.
 "[4.] The verdict of guilty in the charge of attempted murder against [appellant] as either the principal or an aider and abettor was not sustained by sufficient evidence.
 "[5.] The verdict of guilty in the charge of felonious assault against [appellant] as either the principal or an aider and abettor was not sustained by sufficient evidence.
 "[6.] The verdict of guilty in the charge of conspiracy to commit murder was not sustained by sufficient evidence.
 "[7.] [Appellant's] convictions for attempted murder with a firearms specification, felonious assault with a firearms specification and conspiracy to commit murder were against the manifest weight of the evidence.
 "[8.] The trial court committed reversible error by denying [appellant's] motion for a new trial."
 In her first assignment of error, appellant contends that the trial court erred in denying her motion to dismiss for lack of a speedy trial. Pursuant to R.C. 2945.71(C)(2), an individual against whom a felony charge is pending must be brought to trial within two hundred seventy days after his arrest. In computing this time, each day a defendant is held in jail, in lieu of bail, counts as three days. R.C. 2945.71(E).
In the instant matter, we disagree with appellant's speedy trial calculations. The statute was running during the forty-eight days between appellant's arrest on September 17, 1996, and the date she was released on bail, November 5, 1996. Because she was incarcerated, in lieu of bail, during the forty-eight days, one hundred forty-four days were tallied against appellee under the triple count provision.
On November 21, 1996, appellant filed a motion to suppress. Accordingly, from November 5, 1996 to November 21, 1996, sixteen days passed. Since appellant was released on bail during that time, the sixteen days are subject to the single day count. The motion to suppress was not ruled upon until February 18, 1997, therefore, the statute was tolled until that time.
Thereafter, on March 26, 1997, appellant filed a motion to continue the jury trial. Hence, the period from February 18, 1997 to March 26, 1997, a total of thirty-seven days was chargeable to appellee. Subsequently, appellant filed three separate motions to continue the trial and appellee filed one motion to continue, all of which had the effect of tolling the speedy trial time until August 26, 1997, the date the trial was reset. See R.C.2945.72(H); see, also, State v. Egart (June 26, 1998), Ashtabula App. No. 96-A-0073, unreported, at 6-7. Thus, these motions tolled the speedy trial time through August 26, 1997.
During the interim, on July 29, 1997, appellant filed a motion to suppress. She filed another motion to suppress on July 30, 1997. The hearing on the July 30 motion was held on November 21, 1997. On August 12, 1997, appellant filed a supplement to her July 29, 1997 motion to suppress as well as another motion to suppress. On August 25, 1997, appellant submitted a brief in support of her motion to suppress statements that she made to Mentor police officers. On August 28, 1997, appellee filed a response to appellant's motion to suppress evidence. Appellant submitted another supplemental brief in support of her motion to suppress statements she made on December 1, 1997. All of the motions to suppress were ruled upon on January 26, 1998. Hence, regardless of any other pending motions, the speedy trial time was tolled through January 26, 1998.[2]
On September 30, 1997, appellant filed a motion to dismiss case no. 96-CR-000504. Appellee responded to that motion on October 7, 1997. The motion was ruled upon on January 26, 1998, and also had the effect of simultaneously tolling the statute. Additionally, appellant was not brought to trial until February 3, 1998. Therefore, the period from January 26, 1998 until February 3, 1998, a total of eight days, is also chargeable to appellee.
After reviewing the record with specific focus on the various motions filed by appellant and applying the dictates of R.C.2945.71 and R.C. 2945.72 along with the rationale expressed in controlling case authority, we conclude that the only temporal period chargeable to speedy trial constraints was the forty-eight days from September 17, 1996 to November 5, 1996, which is subject to the triple count provision for a total of one hundred forty-four days. Additionally, the other periods that did not toll the speedy trial statute, which are subject to the single day count, include: (1) November 5, 1996 to November 21, 1996, a total of sixteen days; (2) February 18, 1997 through March 26, 1997, a total of thirty-seven days; and (3) January 26, 1998 to February 3, 1998, a total of eight days. Hence, these periods add up to two hundred five days, which is less than the two hundred seventy required to have a speedy trial violation. Consequently, it is our determination that appellant was brought to trial well within the statutory speedy trial time. Appellant's first assignment of error is not well-founded.
As appellant's second and third assignments of error are interrelated, they will be addressed in a consolidated fashion. In her second assignment of error, appellant argues that the trial court erred in overruling the motion to suppress her videotaped and written statements because her request for an attorney was denied. Further, in her third assignment of error, appellant claims that the trial court erred in overruling her motion to suppress the videotaped and written statements because she did not knowingly, intelligently, and voluntarily waive her Miranda
rights.
It is well-established law that police officers must inform a suspect in custody that he or she has the right to remain silent, that his or her statements may be used against him or her in a court of law, that he or she has the right to an attorney, and that if he or she cannot afford an attorney, one will be appointed prior to questioning. Miranda v. Arizona (1966), 384 U.S. 436,444. Then, the suspect may waive those rights and make incriminating statements against himself or herself without the presence of counsel. Id. This court has stated, "the state bears the burden of proving that statements were procured in compliance with Miranda." State v. Powell (Dec. 31, 1998), Lake App. No 97-L-253, unreported, at 7. Moreover, the United States Supreme Court held that:
 "An express written or oral statement of waiver of the right to remain silent * * * is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver. The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the [Miranda] case. As was unequivocally said in [Miranda], mere silence is not enough. That does not mean that the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver, may never support a conclusion that a defendant has waived his rights. The courts must presume that a defendant did not waive his rights; the prosecution's burden is great; but in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated." North Carolina v. Butler (1979), 441 U.S. 369, 373.
 In State v. Eley (1996), 77 Ohio St.3d 174, 178, the Supreme Court of Ohio reasoned that the state has the burden of proving by a preponderance of the evidence that a defendant "voluntarily, knowingly, and intelligently" waived his or her Miranda rights based on the "totality of the circumstances" surrounding the interrogation. In addition, the trial court assumes the role of the trier of fact when considering a motion to suppress and is in the best position to resolve factual questions and evaluate the credibility of witnesses. State v. Kobi (1997), 122 Ohio App.3d 160, 167. Further, such finding will not be disturbed on appeal absent an abuse of discretion. State v. Lumpkin
(Dec. 18, 1998), Lake App. No. 97-L-228, unreported, at 11. To determine whether a defendant's confession was involuntary, "the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." State v. Edwards
(1976), 49 Ohio St.2d 31, paragraph two of the syllabus.
In the case sub judice, at the suppression hearing, appellant stated that she asked if she should have an attorney present, but Officer Schmitt advised her that that was her decision to make. Subsequently, she was given a form with her written Miranda
warnings. She read and signed it, indicating that she had waived her rights and then she was questioned. Further, all of the officers involved in interrogating appellant stated that they did not use coercive or improper techniques in examining her. Consequently, when considering the totality of the circumstances, there is credible evidence to support the conclusion that appellant was read her rights, signed a waiver, and was not threatened. In addition, the officers said that they did not notice any unusual behavior on appellant's part, nor did she appear to be under the influence of drugs or alcohol. Furthermore, during the day, appellant was given several lengthy breaks. Accordingly, we conclude that appellant's confession was given voluntarily, knowingly, and intelligently. Appellant's second and third assignments of error are not well-taken.
Due to the interrelatedness of appellant's fourth, fifth, sixth, and seventh assignments, they will be addressed in a consolidated manner. In appellant's fourth, fifth, and sixth assignments of error, she attacks the sufficiency of the evidence as to her convictions. In her seventh assignment of error, she alleges that her convictions were against the manifest weight of the evidence.
In State v. Schlee (Dec. 23, 1994), Lake App. No. 93-L-082, unreported, at 10, we held:
 "`Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while `manifest weight' contests the believability of the evidence presented.
 "`"(* * *) (T)he test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence. * * *"'"
In Schlee, supra, unreported, at 11, we also stated that:
 "`[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.
 "`In determining whether the verdict was against the manifest weight of the evidence, "(* * *) (t)he court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)"' (Citations omitted.) (Emphasis added.) * * *"
 A judgment of a trial court should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983), 20 Ohio App.3d 172, 175. See, also, State v. Thompkins
(1997), 78 Ohio St.3d 380, 387.
In the case at bar, in order to convict appellant of attempted murder, pursuant to R.C. 2923.02 and 2903.02, appellee was required to establish that appellant purposely engaged in conduct which, if successful, would have caused another's death. State v.Kidder (1987), 32 Ohio St.3d 279, 283. In challenging her attempted murder conviction on sufficiency and manifest weight grounds, appellant argues that appellee failed to present evidence from which a jury could reasonably find that she purposely sought to cause McMillan's death. If there was no direct evidence presented that appellant intended to kill McMillan, a jury may infer a purpose to kill from the circumstances surrounding the violent crime, including the nature of the weapon used and the manner of its use. State v. Osborne (Apr. 8, 1999), Franklin App. No. 98AP-741, unreported, at 4, 1999 WL 203139.
Here, there was ample evidence, in the form of appellant's own statements to police officers and the testimony of Moss and McMillan, to demonstrate that appellant desired, plotted, and took substantial steps toward attempting to murder McMillan. Moss' testimony revealed that he was going to shoot McMillan in the leg, but appellant said she would kill him. She discussed this plan with Moss for about forty-five minutes. Although McMillan was fortunate enough to survive the gunshot wound, given the nature and severity of the attack, the jury could fairly have found that death could have been a probable result of the gunshot. Consequently, the jury reasonably concluded that appellant purposely engaged in conduct which, if successful, would have caused McMillan's death. Additionally, we cannot say that the jury lost its way and created a manifest miscarriage of justice by convicting appellant of attempted murder.
Appellant was also convicted of felonious assault, as defined under R.C. 2903.11, which provides:
"(A) No person shall knowingly:
 "(1) Cause serious physical harm to another or to another's unborn;
 "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code."
 The act of pointing a gun at another "coupled with a threat, which indicates an intention to use such weapon," is sufficient evidence to support a conviction for felonious assault. State v. Green (1991), 58 Ohio St.3d 239, syllabus.
In State v. Brooks (1989), 44 Ohio St.3d 185, the appellant became involved in a heated argument with the victim in a bar. The appellant then drew a revolver and threatened to shoot the victim. The appellant did not do so, though, leaving as the bar owner summoned the police. Under the circumstances, the court determined that a jury could reasonably conclude that the appellant's actions were "strongly corroborative" of his intent to cause harm. Id. at 192.
In Green, supra, unreported, the court determined that the appellant's actions were sufficient to establish a felonious assault. In that case, the appellant pointed a loaded and cocked rifle at a police officer's head as the officer approached the appellant's home. The appellant proceeded to yell that if the police did not have a warrant, they had to leave. The court found that the appellant's actions, together with his evident threat, demonstrated an intent to cause harm. Id. at 242.
In the present matter, upon a thorough review of the record, it is our determination that there was sufficient evidence presented to demonstrate that appellant's actions were "strongly corroborative" of an intent to cause physical harm. Specifically, appellee presented the testimony of several officers who related that they saw McMillan lying on the floor with a gunshot wound. Moreover, the officers testified that when they arrived at the scene, appellant was holding a weapon. Based upon the foregoing, a rational trier of fact could conclude that appellee proved each essential element of felonious assault beyond a reasonable doubt.
In addition, in her brief, appellant claims that the evidence was insufficient because appellee did not rule out the assault as being some form of self-defense. However, it is well-established that self-defense is an affirmative defense that a defendant bears the burden of proving by a preponderance of the evidence. Statev. Martin (1986), 21 Ohio St.3d 91, syllabus. Whether either the offender or the victim engaged in self-defense is not an element of felonious assault that appellee is obligated to prove. Therefore, appellant's argument that appellee failed to prove the offense by sufficient evidence is wholly without merit.
Moreover, upon a review of the record, we cannot say that the jury lost its way in finding appellant guilty of felonious assault. The jury could easily determine that the evidence presented demonstrated that appellant intended to cause physical harm to McMillan and that appellant took actions to effectuate that intent. Appellant's actions, when viewed in the totality of the circumstances, clearly showed an intent to cause harm and to aid Moss in causing harm to McMillan. Thus, in our view, the manifest weight and sufficiency of the evidence supported appellant's conviction for felonious assault.
Lastly, appellant was convicted of conspiracy to commit murder. Appellant claims that she did not take a substantial, overt act toward the commission of murder. R.C. 2923.01, defines conspiracy and provides:
 "(A) No person, with the purpose to commit or promote or facilitate the commission of aggravated murder, murder, kidnapping, * * * shall do either of the following:
 "(1) With another person or persons, plan or aid in planning the commission of any of the specified offenses;
 "(2) Agree with another person or persons that one or more of them will engage in conduct that facilitates the commission of any of the specified offenses."
In the instant matter, the testimony of Moss revealed that appellant and Moss discussed ways to kill McMillan for about forty-five minutes. Additionally, on September 17, 1996, appellant and Moss carried out one of the plans they had discussed. Moss also stated that when McMillan arrived at the apartment, appellant said, "it's show time." After the incident occurred, appellant reassured Moss that he had nothing to worry about because she took care of everything. Therefore, when viewed in a light most favorable to the prosecution, appellee presented evidence from which a rational trier of fact could have found all the essential elements of the offenses beyond a reasonable doubt.
Regarding the issue of manifest weight, we first recognize that appellant presented no evidence in his case-in-chief. Hence, after reviewing the entire record, weighing the evidence and all reasonable inferences drawn therefrom, and considering the credibility of the witnesses, we cannot say that in resolving the evidential conflict here, the trier of fact clearly lost its way and created a manifest miscarriage of justice. Accordingly, appellant's conviction for conspiracy to commit murder is not against the manifest weight of the evidence.
Thus, in our view, after reviewing the entire record and weighing the evidence and all reasonable inferences, the jury verdicts were supported by competent, credible evidence. Furthermore, there was sufficient evidence presented at trial to allow a reasonable jury to conclude beyond a reasonable doubt that appellant committed the criminal offenses of attempted murder, felonious assault, and conspiracy to commit murder. Likewise, after an examination of the entire record, we conclude that the jury clearly did not lose its way or create such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered. Appellant's fourth, fifth, sixth, and seventh assignments of error lack merit.
In appellant's final assignment of error, she asserts that the trial court erred by denying her motion for a new trial. Specifically, appellant alleges she was denied a fair trial because the trial court erred in overruling her motions to suppress and because the trial court made numerous evidential errors.
The decision to grant or deny a motion for a new trial vests with the trial court and can only be reversed upon a showing of an abuse of discretion. State v. Schiebel (1990), 55 Ohio St.3d 71,76. Absent a clear showing that the court abused its discretion, an appellate court will not reverse the trial court's ruling on the motion. Id. at 76. The law is clear that the jury is free to believe all, some, or none of the testimony of any witness. Statev. Antill (1964), 176 Ohio St. 61, 67; State v. Green (1997),117 Ohio App.3d 644, 654.
Here, appellant has not demonstrated that the trial court abused its discretion. Additionally, after a thorough review of the record, it is our view that the trial court did not commit an abuse of discretion, nor was appellant denied her right to a fair trial. We conclude that the trial court did not err by overruling appellant's motion for a new trial. Appellant's eighth assignment of error is without merit.
For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Lake County Court of Common Pleas is affirmed.
CHRISTLEY, J., O'NEILL, J., concur.
[1] Specifically, the trial court ruled that appellee was ordered not to introduce into evidence any statements made by appellant to the Mentor police officers concerning the shooting. However, depending on the relevancy, appellee could introduce statements she made to the police officers about the alleged rape by McMillan.
[2] We note that appellant argues that the trial court did not timely address her motions to suppress. However, several other motions to suppress, supplemental motions and other motions were filed in the interim. Accordingly, it is our determination that the trial court ruled on the motions to suppress in a timely fashion.