On February 13, 1997, the Jefferson County Grand Jury issued a seven count indictment against Appellant, Bruce Hanlin. Counts one through five stemmed from events which occurred on November 25, 1996, wherein Michael Scott was shot through his car window and Donald Hamann, a security guard, was killed. Count One charged Appellant with the murder of Donald Hamann in violation of R.C. § 2903.02 and contained a firearm specification. Count Two charged Appellant with complicity to commit felonious assault in violation of R.C. §§ 2903.11 (A)(2) and2923.03 and also carried a firearm specification. Count Three charged Appellant with complicity to commit aggravated robbery in violation of R.C. §§ 2911.01 (A)(1)(3) and 2923.03 and contained a firearm specification. Count Four charged Appellant with carrying a concealed weapon in violation of R.C. § 2923.12. Finally, Count Five of the indictment charged Appellant with tampering with evidence in violation of R.C. § 2921.12 (A)(1).
Counts Six and Seven of the indictment stemmed from events occurring on January 24, 1997. On Appellant's motion, the trial court ordered a separate trial as to those counts and, thus, they are not part of this current appeal.
Trial of counts one through five commenced on April 29, 1997. On May 1, 1997, a jury found Appellant guilty on all five counts. The trial court held a sentencing hearing on May 5, 1997, and filed its sentencing order on May 6, 1997. The court sentenced Appellant to fifteen years to life imprisonment plus three years for the firearm specification on count one; eight years imprisonment plus three years for the firearm specification on count two; nine years imprisonment plus three years for the firearm specification on count three; eighteen months imprisonment on count four and three years imprisonment on count five. The court ordered that counts two and three run concurrently, with the remaining sentences to run consecutively.
On May 12, 1997, Appellant filed his notice of appeal. After counsel filed Appellant's brief, Appellant filed a pro se motion to strike his brief, to remove his counsel and to appoint new counsel. This combined motion was denied by the Court.
As Appellant withdrew his first assignment of error regarding the imposition of consecutive sentences for crimes of similar import on June 4, 1998, we need not address this assignment and will proceed directly to Appellant's further arguments.
Appellant's second assignment of error alleges:
 "DEFENDANT WAS DENIED DUE PROCESS OF LAW AS PROVIDED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION ARTICLE I, SECTION 10 BECAUSE THE CONVICTION FOR MURDER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
Appellant argues that the relevant issue in any manifest weight of the evidence issue is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Appellant contends that no rational trier of fact could have found him guilty of murder in the light of the testimony given by Nikita Walker who testified that another man, one Leseanne Smith, confessed to her that he killed Donald Hamann. Based on our review of the record herein, we find that this assignment of error lacks merit.
The issue as to whether a trial court's judgment is against the manifest weight of the evidence was addressed extensively inState v. Thompkins (1997), 78 Ohio St.3d 380.
 "Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'"
Id., 387, quoting Black's Law Dictionary (6 Ed. 1990) 1594.
When reviewing a trial court decision which is alleged to be against the manifest weight of the evidence, a court of appeals acts as a "thirteenth juror", especially when it reviews the trial court's resolution of conflicts in testimony. State v.Thompkins, 387 citing Tibbs v. Florida (1982), 457 U.S. 31, 42.
 "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."
 State v. Thompkins, 387 quoting State v. Martin (1983),20 Ohio App.3d 172, 175. "A reversal based on the weight of the evidence, moreover, can occur only after the State both has presented sufficient evidence to support conviction and has persuaded the jury to convict." State v. Thompkins, 387-388, quoting Tibbs v.Florida 41-43. (citations and footnotes omitted.) To reverse a jury verdict as against the manifest weight of the evidence, a unanimous concurrence of all three appellate judges is required.State v. Thompkins, 389.
In the present case, Appellant does not challenge the legal sufficiency of the evidence presented at trial. Accordingly, we will proceed directly to an analysis of the manifest weight of the evidence. Appellant was convicted of violating R.C. §2903.02, which provides that, "[n]o person shall purposely cause the death of another." Appellant's argument is based on the very brief hearsay testimony of Nikita Walker that a man named Leseanne Smith said he had killed a security guard. (Tr. 667-668). She also testified that Smith's girlfriend threatened to beat her up and burn down her house, but that she had not been physically attacked by her. (Tr. 667)
Walker's testimony, however, is suspect based upon her cross-examination where she confirmed that Smith told her that he was with someone else when the security guard was killed. (Tr. 670). Also weighing against her statement that Smith confessed to the killing is the testimony of twenty-three of the state's witnesses, at least six of whom testified that they saw Appellant with a gun on the evening of the murder. (Tr. 244, 250, 251, 252, 255, 257, 268-269, 307, 314-316, 422, 428-429, 351-352). Two people heard Appellant say he had an "itchy trigger finger." (Tr. 256, 274). One witness placed Appellant fleeing from the area of the murder directly after the shooting. (Tr. 406-411)
Moreover, two witnesses testified that Appellant confessed to them that he shot and killed Donald Hamann. (Tr. 361, 363, 497). The same witnesses also testified that Appellant described in detail how he fled from the scene. (Tr. 362, 498-499). In addition, the trial court admitted into evidence Smith's statement to police that he saw Appellant fire shots at the security guard in direct contradiction to Nikita Walker's testimony.
Given the State's evidence against Appellant, we cannot say that the jury clearly lost its way in convicting him of murder. Appellant asks us to conclude that Nikita Walker's testimony is more credible than that of any other witness. Judging the credibility of witnesses is primarily the responsibility of the jury. State v. DeHass (1967). 10 Ohio St.2d 230, 231. Where there exists conflicting testimony, either of which version may be true, we may not choose which view we prefer. State v. Gore (Feb. 17, 1999), Mahoning App. No. 94 CA 97, unreported, *2. "Instead, we must accede to the jury who `is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" Id., quoting SeasonsCoal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80. Conceding to the jury's advantageous position, we hold that Appellant's conviction for murder was not against the manifest weight of the evidence and overrule this assignment of error.
Appellant's third assignment of error alleges:
 "THE STATE VIOLATED BRADY V. MARYLAND BY FAILING TO DISCLOSE EVIDENCE FAVORABLE TO DEFENSE."
Appellant argues that according to Brady v. Maryland (1963),373 U.S. 83, due process is violated if the prosecution suppresses evidence favorable to the accused which is material to either guilt or punishment, irrespective of the good faith or bad faith of the prosecution. Appellant asserts that the prosecution took a statement from Nikita Walker on December 2, 1996, where she alleged that Leseanne Smith confessed to killing Mr. Hamann. Appellant contends that the state was required to make Walker's statement available through discovery. Appellant admits that his counsel learned during discovery that Walker had made a statement to police. Nevertheless, Appellant maintains that he was prejudiced because he was not able to inspect the statement prior to trial. Once again, based on the record before us we find that this assignment of error lacks merit.
In Brady v. Maryland, supra, the United States Supreme Court held:
 "* * * the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to either guilt or punishment, irrespective of the good faith or bad faith of the prosecution."
Id., 87. The Supreme Court later clarified that:
 "The rule of Brady v. Maryland, 373 U.S. 83, arguably applies in three quite different situations. Each involves the discovery, after trial, of information which had been known to the prosecution but unknown to the defense."
United States v. Agurs, (1976), 427 U.S. 97, 103. FollowingAgurs, the Ohio Supreme Court held that when alleged exculpatory evidence was presented during trial, there was no Brady violation which would require a new trial. State v. Wickline (1990),50 Ohio St.3d 114. 116.
Appellant admits in his brief that he learned through his own investigation that Nikita Walker made a statement to police. Appellant's Brief, 15. Prior to Walker's testimony at trial the court held an in camera hearing during which Walker stated that police had taken a statement from her in early December, 1996, "[t]hat Leseanne Smith had came to my house and said they beat up a security guard." (Tr. 662). She subsequently indicated that, "beat up," meant that they had killed the guard. Ms. Walker also stated that Appellant's counsel visited her home prior to trial and she told them about the statement she had given to the police. (Tr. 661-662). Appellant's counsel and the court discussed whether Ms. Walker should take the stand or if the written statement should be admitted. It was decided that Walker should testify. (Tr. 665). Appellant later withdrew Walker's written statement as an exhibit and it was not admitted into evidence. (Tr. 681).
The record is clear that Appellant knew about the statement before and during trial. The record also reveals that the exculpatory information in the statement was presented at trial through Walker's testimony and that Appellant's counsel voluntarily withdrew the statement from evidence without objection. Because the alleged withholding of exculpatory evidence was discovered before trial and was presented at trial, there was no Brady violation. Therefore, we overrule this assignment of error.
Appellant's fourth assignment of error alleges:
 "THE FINDING OF GUILTY ON THE TAMPERING WITH EVIDENCE CHARGE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
Appellant maintains that the state produced no evidence to support a conviction for tampering with the evidence. Appellant's argument focusses on the murder weapon, which was never found. Appellant argues that there was evidence that he dropped or lost the gun and, therefore, reasonable minds could not conclude that he tampered with evidence. We find no merit in Appellant's assignment of error on this issue.
Despite his phrasing of this assignment, Appellant challenges both the sufficiency of the evidence presented at trial and claims that his conviction was against the manifest weight of the evidence. As we stated earlier to find that the jury's verdict was against the manifest weight of the evidence, we must find that the State has presented sufficient evidence to support a conviction and has persuaded the jury to convict. State v.Thompkins, supra, 387-388. "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." Id., 386, citing State v. Robinson
(1955), 162 Ohio St. 486. When addressing a claim of insufficient evidence, a reviewing court considers all probative evidence and the reasonable inferences to be drawn therefrom in a light most favorable to the prosecution and determines whether a rational trier of fact could have found all of the elements of the crime charged beyond a reasonable doubt. State v. Filiaggi (1999),86 Ohio St.3d 230, 247 citing State v. Jenks (1991), 61 Ohio St.3d 259
and State v. Eley (1978), 56 Ohio St.2d 169.
R.C. § 2921.12 (A) states in relevant part:
 "(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:
 "(1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation * * * ",
Proof in the record that police searched for the gun and could not find it is not enough to sustain a conviction for tampering with evidence. State v. Wooden (1993), 86 Ohio App.3d 23, 27. In the present case, however, James Brooks testified that Appellant confessed that he wiped off the gun and planned to place it under a log when he was running through the woods from police on the night of the murder. (Tr. 398). Detective Lelless of the Steubenville Police Department testified that Leseanne Smith stated that Appellant wiped the gun with a handkerchief after the shooting. (Tr. 605). Moreover, Brandon Webb testified that Appellant confessed to him that the gun was under some bushes. (Tr. 498)
From this evidence a jury could conclude that Appellant knew that an official investigation of the murder had already begun, that he had physically altered the gun by wiping off his fingerprints and that the purpose of wiping off the fingerprints was to prevent the police from associating the gun with him during the investigation. Although the gun was never recovered, there is substantial and credible evidence that Appellant knew an official investigation had begun and that he altered and concealed the gun for the purpose of impairing the value and availability of the gun as evidence.
Turning to whether Appellant's conviction for tampering with evidence was against the manifest weight of the evidence, we re-state that we are to act as a "thirteenth juror" and review all the evidence and reasonable inferences, consider the credibility of the witnesses ad determine whether the jury clearly lost its way and created a manifest miscarriage of justice which mandates a reversal. State v. Thompkins, supra, 387. Having appropriately reviewed the record, we conclude that the evidence that we have already stated with respect to the sufficiency argument formed a substantial basis on which the jury could have found Appellant guilty beyond a reasonable doubt.
Appellant points to the testimony of James Brooks that Appellant merely "dropped" or "lost" the gun. (Tr. 282-283, 288). This is clearly in conflict with Brooks' subsequent testimony that Appellant admitted wiping off the gun with the intent to place it under a log. (Tr. 398). It is axiomatic, however, that a jury is free to believe all or part or none of the testimony of each witness. State v. Green (1996), 117 Ohio App.3d 644, 654, citing State v. Antill (1964), 176 Ohio St. 61. Regardless, the state presented the testimony of two other witnesses to support Appellant's conviction on the charge of tampering with evidence. (Tr. 498, 605). As such, we cannot conclude that the jury clearly lost its way and created a manifest miscarriage of justice. State v. Thompkins, 387. Accordingly, we overrule this assignment of error.
For all the foregoing reasons we affirm the judgment and sentence of the trial court.
Cox, P.J., concurs, Vukovich, J., concurs.
 ______________________ CHERYL L. WAITE, JUDGE