OPINION
Defendant-appellant, Dwight A. Johnson, was tried and convicted by a jury on one count of aggravated murder with a gun specification and one count of aggravated robbery with a gun specification. The case involved the December 20, 1997 shooting death of Henry Howell. Howell was shot in broad daylight by the parking lot dumpsters of the Kenmore Square apartment complex in Columbus.
At the conclusion of a mitigation hearing, the jury recommended life imprisonment with a possibility of parole after thirty years on the aggravated murder conviction. The judge followed the jury's sentencing recommendation and also sentenced Johnson to an additional ten years for the aggravated robbery and an additional three years for the merged gun specifications. The judge ordered that the sentences be served consecutively, for a total minimum sentence of forty-three years.
Testimony at trial demonstrated that, on December 20, 1997, the victim, Henry Howell, was visiting his girlfriend, Nicole Collins, who lived in the Kenmore Square apartments. Howell was disabled; he wore a leg brace and walked with a limp. He had cashed his $400 social security disability check that morning. He gave Collins some money to buy groceries and told her that he was tempted to use the rest of his money to buy and sell drugs to generate extra money for Christmas gifts.
Howell then walked to his sister's apartment in the same complex. While he was walking, two of Howell's teenaged children were driving by on their way to a Bible study class. The children stopped the car. Howell gave them $20 from a wad of bills he took from his pocket. Howell's son testified that he noticed a light-skinned black male in the background while Howell had his money out. The children drove away, and by the time they returned to the area about fifteen minutes later their father had been shot.
Based on information received early in the investigation, lead police detective, William Gillette, put together two sets of photo arrays of possible suspects. These photo arrays did not include a picture of Johnson, and none of the witnesses identified the shooter from these pictures. As the investigation developed, Gillette assembled a third photo array, which included a photograph of Johnson. Several witnesses identified Johnson as the man who looked most like the shooter.
Charod Wooden testified that he was at a friend's apartment in Kenmore Square on December 20, 1997. Wooden testified that he saw Howell outside the apartment. Howell was trying to buy drugs, but no one in the apartment would sell drugs to Howell because they did not know him. According to Wooden, Johnson was in this apartment when Howell attempted to purchase drugs. At that time, Wooden had known Johnson for a few years. Wooden testified that Johnson was complaining that he had been robbed the night before and that he "had to get what he lost back." Wooden left to visit a friend in an apartment near the dumpsters. Wooden testified that, when he walked out the apartment door about fifteen minutes later, he saw Howell and Johnson facing each other by the dumpsters. Wooden testified that he saw Howell back up with his hands up, he saw Johnson point something at Howell, he heard a shot and he saw Howell stagger. As Wooden ran away, he heard two more shots.
On cross-examination, Wooden admitted that he did not contact the police with information about Howell's shooting until six months after Wooden was incarcerated for an unrelated felony. Wooden testified that he had not been promised anything in exchange for his testimony, but he admitted that he expected the prosecutor to "speak up for me at my sentencing."
Three children testified for the prosecution. Leroy Thornton and Anthony Butts testified that they were playing on the back porch at Butts' apartment when Howell was shot. Thornton, who was seven years old on December 20, 1997, testified that he saw Johnson shoot Howell. Thornton had selected Johnson from a photo array during the investigation in 1997, and he identified Johnson in court as the shooter. On cross-examination, Thornton admitted that, prior to trial, the prosecutor had told Thornton that Johnson would be seated at the defense table. Butts, who was six years old at the time of the crime, gave mixed testimony. Butts identified Johnson as the shooter, but he also testified that he could not see the shooter's face. Both Thornton and Butts testified that they knew Johnson from the neighborhood before the shooting.
Sharayn Miller was seven on December 20, 1997. She testified that she was jumping rope outside her apartment on the day in question when she heard a gunshot and saw a man run past her, shoving a dark colored gun into the front of his pants. Miller testified that the police showed her a photo array, including a picture of Johnson, and Miller picked out Johnson as the man who "looks most like" the man who ran past her with a gun. Miller testified that she was not entirely forthcoming with the police during the investigation because her mother did not want her to get involved. According to Miller's trial testimony, the photo of Johnson actually looked "exactly like" the man who ran past her with a gun. Miller also testified that she knew Johnson from the neighborhood. On cross-examination, Miller admitted that the prosecutor had told Miller that the man who ran in front of her would be sitting at the defense table.
Rachael Jordan, assistant manager of Orchid Laundromat, testified that, on the afternoon of December 20, 1997, she heard police sirens and a helicopter at the same time that a man ran into the store. The man looked frightened and twice called on the telephone for someone to pick him up. Jordan identified Johnson as the man who made the phone calls from the laundromat.
Dr. Patrick Fardal, the coroner who performed the autopsy, testified that Howell had been shot twice, resulting in a non-fatal scalp wound and a fatal wound to the chest. Criminalist, Mark Hardy, testified that the two bullets had been fired from the same weapon. He opined that the weapon was a .38 caliber gun.
Melvin Scott, a friend of Johnson, testified that Johnson owned a .38 caliber revolver. Scott also testified that he and Johnson were at Laconta Hamilton's apartment some time after December 20, 1997, when Johnson admitted that he had recently shot a man and took approximately $100. On December 21, 1997, Deantea Bennett was in Hamilton's apartment when she heard Johnson admit to Melvin Scott that he had to dispose of bullet casings.
The defense called two witnesses. Pamela Mosley, Johnson's girlfriend, testified that she never saw Johnson carry a gun. She also testified that Johnson had a black eye on the date of the shooting from an unrelated fight, a marking that none of the eye witnesses had observed. Willita Cooksey, another resident who knew Johnson from the neighborhood, testified that she looked out her front door when she heard the shots and saw two men running from the dumpster area. Although she admitted that she did not see their faces, she testified that appellant was not one of the running men. Cooksey also testified that she held Howell's hand until the ambulance arrived and that Howell told her that two men had tried to rob him.
On appeal, Johnson raises the following assignments of error:
 Assignment of Error One: THE TRIAL COURT ERRED BY OVERRULING APPELLANT'S MOTION TO SUPPRESS PHOTO IDENTIFICATION.
 Assignment of Error Two: TRIAL COURT PERMITTED WITNESSES TO SHOW JURY STATES EXHIBITS PRIOR TO ADMISSION INTO EVIDENCE.
 Assignment of Error Three: THE TRIAL COURT ERRED BY PERMITTING EXPERT OPINION TESTIMONY THAT WAS NOT BASED ON A PROPER STANDARD.
 Assignment of Error Four: TRIAL COURT ERRED BY NOT PERMITTING TRIAL COUNSEL TO REVIEW VIDEO STATEMENT OF STATE'S WITNESSES.
 Assignment of Error Five: IMPROPER COMMENTS BY THE PROSECUTOR CREATES REVERSIBLE ERROR WHEN DURING THE CLOSING ARGUMENTS THE STATE INTERJECTS PERSONAL OPINION.
 Assignment of Error Six: THE TRIAL COURT ERRED IN SENTENCING THE APPELLANT TO MAXIMUM CONSECUTIVE SENTENCES.
 Assignment of Error Seven: THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THE TRIAL COURT ERRED IN FINDING APPELLANT GUILTY. THIS DENIED APPELLANT A FAIR TRIAL AND DUE PROCESS OF LAW AS GUARNTEED BY THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION.
In his first assignment of error, Johnson argues that the trial court erred in overruling his motion to suppress identifications made from the photo array. Johnson argues that the procedures used during the photo identifications were impermissibly suggestive and gave rise to a very substantial likelihood of an erroneous identification.
The admission or exclusion of evidence is generally left to the sound discretion of the trial court. State v. Maurer (1984), 15 Ohio St.3d 239,265. Upon appellate review of a motion to suppress, while this court is "bound to accept the trial court's findings of fact which are supported by competent, credible evidence, we must independently determine as a matter of law, without deference to the trial court's conclusions, whether the findings of fact satisfy the appropriate legal standard."State v. Goins (Oct. 22, 1998), Franklin App. No. 98AP-266, unreported.
To warrant suppression of identification testimony, the accused has the burden to demonstrate that the identification procedures were unnecessarily suggestive and that the resulting identification was unreliable based upon the totality of the circumstances. State v. Green
(1996), 117 Ohio App.3d 644, 652-653. In Neil v. Biggers (1972),409 U.S. 188, 199-200, the United States Supreme Court noted that the factors to consider in evaluating the likelihood of misidentification include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."
Johnson has not proven that the photo identifications were unnecessarily suggestive or that the resulting identifications were unreliable. The detective who generated the photo array testified at the suppression hearing that the witnesses were shown the array between December 23 and 29, 1997, within nine days of the crime. Testimony at trial demonstrated that all of the witnesses who picked Johnson from the array had clear views of the crime and, with the exception of Rachel Jordan who selected Johnson as the man she observed in the Orchid Laundromat, all of the witnesses knew Johnson from the neighborhood before the date of the crime.
Johnson argues that he was not afforded the opportunity to establish the suggestiveness of the identification procedures because the witnesses who identified Johnson in the photo array did not testify at the suppression hearing. There is no evidence, however, that Johnson subpoenaed the witnesses or made any other effort to procure their testimony. Two of the children who had identified Johnson in the photo array were in court earlier on the day of the suppression hearing and the prosecutor offered to have them come to court another day, an offer that Johnson's attorneys did not pursue.
Moreover, Johnson's attorneys did not ask the court to delay the hearing in order to procure witnesses, nor did they object during the hearing or when the court indicated that it would take the issue under advisement. Thus, appellant waived anything but plain error by the trial court. See State v. Moreland (1990), 50 Ohio St.3d 58, 62.
Under Crim.R. 52(B), we may address plain errors or defects affecting substantial right, although they were not brought to the attention of the trial court. State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. "Plain error is found where, but for the error, the outcome of the trial would have been otherwise." State v. Franklin (1991),62 Ohio St.3d 118, 128, certiorari denied (1992), 504 U.S. 960. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Long, paragraph three of the syllabus. On the record before us, which includes several in-court identifications of Johnson as the perpetrator, we cannot conclude that the outcome of the trial would have been different had the trial court suppressed the photo identifications.
Johnson next argues that the photo identifications should have been suppressed due to the behavior of the state's victim assistant advocate. Johnson alleges that, while the victim assistant advocate was in the courtroom with Leroy Thornton and Anthony Butts, the advocate told these two young boys that criminals were kept behind a certain door. Johnson later emerged from behind the door. Johnson also notes that the trial court had previously cautioned the prosecutor about statements made in court in front of these children. Although he does not cite to this passage in his brief, Johnson may be referring to the following exchange that occurred on November 16, 1999:
 [MS. REULBACH:] THE COURT CAN SEE THE TWO YOUNG MEN WHO NOW — IT'S BEEN ALMOST TWO YEARS SINCE THIS OCCURRED, AND THESE BOYS, SEVEN AND SIX AT THE TIME THIS OCCURRED, AND THEY ARE NOW NINE AND EIGHT, AND YOUR HONOR, HAVING BEEN OUT TO THE SCENE, I CAN TELL YOU THAT THESE BOYS WITNESSED THIS MURDER WITHIN SIX FEET OF THE GUN GOING OFF, AND OBVIOUSLY, HE'S HAVING QUITE A BIT OF DIFFICULTY —
 THE COURT: QUITE FRANKLY, WITH THESE KIND OF STATEMENTS GOING ON, THESE BOYS SHOULD BE OUTSIDE THE COURTROOM, THEY SHOULD NOT BE IN THE COURTROOM NOW. IF YOU ARE GOING TO BE MAKING THESE KINDS OF STATEMENTS, I DON'T BELIEVE THAT IS APPROPRIATE, AND I BELIEVE THE RECORD SHOULD REFLECT THAT I'M GOING TO ASK THAT THESE YOUNG BOYS LEAVE THE COURTROOM.
While in other circumstances the actions of the victim advocate and the prosecutor's statement might be problematic, based on the facts of this case, these occurrences had no bearing on the witnesses' earlier photo array identifications of Johnson. The photo identifications were made nearly a year before the occurrences at issue. Johnson provides no evidence whatsoever that the prosecutor or anyone else made any type of suggestive comments to the witnesses either prior to or at the time of their photo identifications. Johnson's first assignment of error is overruled.
By his second assignment of error, Johnson contends that the trial court improperly permitted witnesses to show the state's exhibits to the jury prior to the admission of those exhibits into evidence. Evid.R. 611(A) grants the trial court reasonable control over the presentation of evidence at trial. Moreover, because defense counsel did not object to the display of any of the state's exhibits prior to their admission into evidence, we must confine our review to the plain error doctrine. SeeMoreland, at 62.
We find no plain error in the way evidence was displayed to the jury. None of the exhibits shown to the jury was ever deemed inadmissible and all were admitted without objection, nor does Johnson argue that the jury saw any inadmissible exhibits. Johnson's second assignment of error is overruled.
In his third assignment of error, Johnson argues that the trial court erred by permitting the state's coroner and criminalist to give improper expert testimony. Specifically, Johnson argues that the coroner improperly opined that Howell's death was caused by a gunshot wound to the chest and that a hair brush in Howell's pocket might have caused a larger-than-normal entrance wound. Johnson further contends that the criminalist improperly opined that the bullets were fired from the same .38 caliber gun and that one of the bullets had markings that could have been caused by striking a hair brush. Acknowledging that his attorneys did not object to this testimony at trial, Johnson argues that its admission rises to plain error.
Decisions regarding the admissibility of expert testimony lie within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of that discretion. Bostic v. Connor (1988),37 Ohio St.3d 144, 148. An abuse of discretion requires more than an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary or unconscionable. State v. Clark (1994),71 Ohio St.3d 466, 469.
Johnson contends that the coroner's opinions should have been excluded because they were not based on a reasonable degree of medical or scientific certainty. Even assuming for the sake of argument that the coroner's comments were not based on a reasonable degree of medical certainty, the Ohio Supreme Court has declared that "the better practice, especially in criminal cases, is to let experts testify in terms of possibility." State v. D'Ambrosio (1993), 67 Ohio St.3d 185, 191. See, also, State v. Allen (1995), 73 Ohio St.3d 626, 635-636 (concluding that there was no error in expert testimony that items burned in a fireplace "could have" had blood on them or that it was "possible" that the substance on the bottom of defendant's shoes was ash). Nor did admission of these opinions amount to plain error. Johnson based his defense on misidentification. He conceded that the victim died as a result of a gunshot wound.
Johnson next argues that the opinions from the coroner and criminalist should have been excluded because they were not based upon scientifically valid principles. We do not agree. The coroner testified that his opinions were based on the autopsy he performed and the criminalist testified that his opinions were based upon his own microscopic examinations of the bullets retrieved from the crime scene. Johnson cites to no authority, nor are we aware of any, that invalidate the principles employed by the coroner or the criminalist. Admission of these opinions does not constitute plain error. Johnson's third assignment of error is overruled.
In his fourth assignment of error, Johnson argues that the trial court ran afoul of Crim.R. 16(B)(1)(g) because it did not permit Johnson's counsel to review videotaped statements of state witnesses Leroy Thornton and Anthony Butts.
Crim.R. 16(B)(1)(g) provides the following:
 (g) * * * Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement.
 If the court determines that inconsistencies exist, the statement shall be given to the defense attorney for use in cross-examination of the witness as to the inconsistencies.
 If the court determines that inconsistencies do not exist, the statement shall not be given to the defense attorney and he shall not be permitted to cross-examine or comment thereon.
When a defendant "fails to move the court to inspect" a prior statement, "he cannot later complain that he was wrongfully denied the opportunity to cross-examine * * * on apparent inconsistencies." State v.Schnipper (1986), 22 Ohio St.3d 158, 160.
Johnson's argument is unavailing. Johnson's attorney did not move for an in camera inspection at the close of the examinations of Leroy Thornton or Anthony Butts, as required by Crim.R. 16(B)(1)(g). Nor did Johnson's counsel indicate to the court at any time during the trial proceedings that they wanted to review the videotapes. Moreover, the trial court conducted an in camera review of the videotapes on its own initiative and concluded that there was no reason to show the tapes to the jury. Johnson's counsel did not object to the court's decision. Johnson's fourth assignment of error is overruled.
By his fifth assignment of error, Johnson contends that the prosecutor committed misconduct during her closing argument by making three allegedly improper comments. Johnson argues that the prosecutor made an improper statement of personal opinion, referred to facts that were not in evidence and attacked defense counsel. Johnson contends that the trial court committed reversible error because it failed to give a curative instruction to the jury. According to Johnson, the trial court should have instructed the jury that the court disapproved of the prosecutor's comments.
"The test for prosecutorial misconduct * * * is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused." State v. White (1998), 82 Ohio St.3d 16, 22
(1998), certiorari denied, 525 U.S. 1057. The analysis must center on the fairness of the trial, not the culpability of the prosecutor. Id. The prosecutor's conduct cannot be grounds for a new trial unless the conduct deprives the defendant of a fair trial. State v. Keenan (1993),66 Ohio St.3d 402, 405.
Even if a prosecutor's statements during closing arguments are improper, reversal based upon those statements is warranted only if the statements permeate the entire atmosphere of the trial. State v.Tumbleson (1995), 105 Ohio App.3d 693, 699. Moreover, "[i]n the tension and turmoil of a trial, both the prosecution and the defense have wide latitude in summation as to what the evidence has shown and what reasonable inferences may be drawn therefrom." State v. Lott (1990),51 Ohio St.3d 160, 165, certiorari denied (1990), 498 U.S. 1017. When examining the prosecutor's arguments for possible misconduct, we must review the argument as a whole, not in isolated parts, and we must examine the argument in relation to that of opposing counsel. State v.Moritz (1980), 63 Ohio St.2d 150, 157-158.
As an initial matter, we note that defense counsel did not object to the prosecutor's alleged attack on defense counsel. Johnson has therefore waived all but plain error with regard to those statements. See State v.Wade (1978), 53 Ohio St.2d 182, paragraph one of the syllabus. Nonetheless, we have reviewed each statement in the context of the arguments as a whole, and we conclude that the prosecutor's statements did not deprive Johnson of a fair trial. The trial court instructed the jury at the onset of closing arguments that "closing arguments are not evidence and should not be construed as evidence, but simply an opportunity for counsel, the lawyers, to tell you what they think the evidence in this case has shown or demonstrated." (Tr. 874-875.) The court reminded the jury of this instruction after it sustained Johnson's objection to the prosecutor's alleged reference to facts that were not in evidence. The jury is presumed to follow the trial court's instructions.State v. Raglin (1998), 83 Ohio St.3d 253, 264. We must therefore presume that the jury followed this instruction in its deliberations and based its decisions on the evidence alone. Johnson's fifth assignment of error is overruled.
In his sixth assignment of error, Johnson contends that the trial court erred in sentencing Johnson to maximum consecutive sentences. A trial court is given broad discretion when sentencing within the confines of statutory authority. State v. Wright (1998), 126 Ohio App.3d 628, 632. An appellate court may not set aside the sentence if there is no clear showing that the trial court abused its discretion. State v. McCullough
(July 27, 1999), Franklin App. No. 98AP-988, unreported. In determining whether the trial court complied with the statutory requirements, we may review the judgment entry, the transcript and the sentencing worksheet.State v. Buterbaugh (Sept. 16, 1999), Franklin App. No. 98AP-1093, unreported.
Johnson argues that the trial court erred in sentencing him to the maximum sentence for aggravated robbery. Under R.C. 2929.14(C), the trial court was entitled to impose the maximum ten year prison term for aggravated robbery if it concluded that Johnson "committed the worst forms of the offense" or "pose[d] the greatest likelihood of committing future crimes." We conclude that the trial court did not abuse its discretion when it imposed the maximum term for aggravated robbery. In its judgment entry, the trial court stated that it was imposing the maximum sentence because Johnson "committed the worst form of the offense" and because Johnson is apt to commit future crimes. At the sentencing hearing, the trial court expressly commented on the gravity of the offense, noting that Johnson fired at the victim three times during the course of the robbery. Thus, the trial court complied with R.C.2929.14(C) in order to impose the maximum sentence.
Johnson next argues that the trial court erred in imposing consecutive sentences. R.C. 2929.14(E)(4) and 2929.19(B)(2)(c) authorize the trial court to impose consecutive sentences under certain circumstances. R.C.2929.19(B)(2)(c) provides:
 (2) The court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances:
* * *
 (c) If it imposes consecutive sentences under section 2929.14
of the Revised Code, its reasons for imposing the consecutive sentences[.]
R.C. 2929.14(E)(4) provides the following in relevant part:
 (4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 (a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
Thus, to impose consecutive sentences, the trial court must give reasons beyond the required statutory findings and those reasons must fall within the categories set forth in R.C. 2929.14(E)(4)(a) through (c). While the trial court alluded to reasons that could support consecutive sentences, we nonetheless find the trial court failed to set forth its reasons either at the sentencing hearing or in the entry. This matter must be remanded to the trial court for re-sentencing.
Johnson's sixth assignment of error is overruled in part and sustained in part.
Johnson argues in his seventh assignment of error that the jury's verdict was against the manifest weight of the evidence. In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a "thirteenth juror." Under this standard of review, the appellate court weighs the evidence in order to determine whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997), 78 Ohio St.3d 380, 387. The appellate court, however, must bear in mind the trier of fact's superior, first-hand perspective in judging the demeanor and credibility of witnesses. See State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The power to reverse on "manifest weight" grounds should only be used in exceptional circumstances, when "the evidence weighs heavily against the conviction." Thompkins, at 387.
We conclude that Johnson's conviction was not against the manifest weight of the evidence. The state provided significant evidence connecting Johnson to these crimes. Charod Wooden testified that shortly before the shooting he overheard Johnson complain that he had to recoup what he lost in a recent robbery. Wooden testified that he saw Johnson shoot Howell. Leroy Thornton and Anthony Butts testified that they saw Johnson shoot Howell while they were playing at a nearby apartment. Sharayn Miller testified that Johnson ran past her, shoving a gun into his pants. Rachael Jordan testified that Johnson appeared to be nervous as he made two phone calls in an effort to get someone to pick him up at the nearby Orchid Laundromat. A criminalist testified that the shots were likely fired from a .38 caliber revolver. Melvin Scott testified that Johnson owned a .38 caliber revolver and that Johnson had admitted that he had shot a man and stolen $100. We therefore overrule Johnson's seventh assignment of error.
For the foregoing reasons, Johnson's first, second, third, fourth, fifth and seventh assignments of error are overruled, appellant's sixth assignment of error is overruled in part and sustained in part, and the judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part. This matter is remanded to the trial court for re-sentencing in accordance with this opinion.
Judgment affirmed in part, reversed in part and cause remanded.
BRYANT, P.J., and BROWN, J., concur.