**The STATE of Ohio, Appellee,**

v.

**GREEN, Appellant.**

[Cite as *State v. Green* (1996), 117 Ohio App.3d 644.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–950956 and C–960017.

Decided Dec. 31, 1996.

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Jennifer E. Day*, Assistant Prosecuting Attorney, for appellee.

*Raul E. Tellez*, for appellant.

SHANNON, Judge.

Appellant Gregory R. Green, Sr., appeals his convictions for aggravated robbery, robbery, and receiving stolen property in contravention of R.C. 2911.01(A)(1), 2911.02(A), and 2913.51(A), respectively, following guilty verdicts on all three counts. In a separate hearing, the trial court found appellant guilty of a specification of a prior felony for aggravated robbery. The trial court sentenced appellant as appears in the record. In his appeal, appellant raises four assignments of error, asserting that the trial court erred to his prejudice by (1) engaging in an *ex parte* communication with the jury during its deliberations, (2) failing to grant his Crim.R. 29 motion for acquittal and entering judgment against him on the aggravated robbery count, and (3) overruling his motion to suppress identification testimony. Appellant's fourth assignment of error refers to the arguments in the *pro se* brief, attached to the brief filed by appellant's counsel on appellant's behalf, which assigns as error the trial court's allowance of testimony as to his other criminal acts and the insufficiency of the evidence as to all his convictions. Appellant's argument in support of his second *pro se* assignment of error raises issues of weight and credibility, not sufficiency, and will thus be addressed accordingly.[1]

---

1. We have *sua sponte* consolidated appeal No. C–960017 with appeal No. C–950956 for purposes of this appeal.

On or about May 5, 1995, a man later identified as appellant entered the Franklin Savings and Loan Bank in Cincinnati, Ohio and approached teller Linda Fisher. He informed her that he wanted to cash an income tax check and requested large bills. Upon informing the teller he had an account at the bank and being told that his check could be cashed, appellant turned to the side, made fumbling motions, with his hands out of view, and then turned to the teller with a large envelope wrapped around his right hand. He motioned her forward and said, "[N]ow this is a stickup, and if you press any buttons I'll blow your brains out." He then reached across the counter, feeling for a drawer and poking the teller in the stomach with his fingers. She stepped back, reached over, and opened the cash drawer. Appellant pulled himself over the counter and grabbed the money. At that point, the teller did not see the envelope. Fisher testified that she did not see a gun and that appellant never said he actually had a gun. She testified, "He simply had his—an envelope wrapped around his hand in a way to make me, I suppose, suspect he might have one." She testified that she hoped that he did not.

Fisher alerted Dina Bradford, a nearby teller, who pressed the alarm button and ran to get the bank manager. Bradford testified that after appellant took the money, he looked at her and James Hood, the bank manager, and said, "Don't move or I'll blow your brains out." She testified that at the time appellant made the statement his hands were in his pockets. She also testified that she had not seen a gun in his hands while he was taking the money. Hood testified that after appellant had taken the money he said, "Nobody move, don't move or I'll blow your brains out."

Charlotte Jackson, a customer at the bank, testified that she first realized the bank was being robbed when appellant "jumped over and got the money" and stuffed it in his jacket pockets. She did not see an envelope. She did hear appellant say, "Nobody move or I'll blow your brains out." Linda Fatherree, another customer, testified that once she heard shouting, including the statement "if you follow me, I'll blow your brains out," she "hit the floor" and tried to hide. She subsequently glimpsed a person carrying money in both his hands rushing toward the door of the bank. Appellant left the bank with approximately $1,375 and a red dye pack. A witness walking down the street near the bank observed appellant running toward him with "red smoke coming out of his jacket."

Approximately forty-five minutes after the robbery, Nayka Lovett and her boyfriend, Johnny Ruffin, were driving on Reading Road when a grey Cavalier driven by appellant hit the side of Lovett's car. Because the automobile had no license plate displayed, Lovett and Ruffin decided to pursue it. After a short high-speed chase, they were able to stop appellant, and Ruffin jumped out of Lovett's car with the intention of punching appellant. When Ruffin approached

the window of appellant's automobile, he saw what he thought was blood over the front of appellant. Ruffin returned to Lovett's automobile and appellant drove away. After running an errand at a nearby bank, Lovett and Ruffin decided to search for appellant. Approximately forty-five minutes later, they located his car in the Hillcrest Gardens area and asked security guards for assistance. Ruffin noticed a license plate in the front seat of the car. The security guards called the police. Meanwhile Ruffin noticed appellant peeking around a building and identified him to the security guards. Appellant was wearing different clothes from those he had been wearing when Ruffin had previously seen him. A foot chase ensued and resulted in appellant's apprehension. A Cincinnati police officer arrested appellant in connection with the automobile accident, issued two tickets, and later released him.

Subsequently, the Cincinnati police received an anonymous telephone tip that the person who had robbed Franklin Savings and Loan Bank was driving a grey Cavalier on Vine Street. Responding to the information, the Cincinnati police stopped appellant in a parking lot. A background check revealed that appellant had an outstanding warrant. A check on the license plate displayed in the rear window of the Cavalier revealed that it had been reported as lost. After speaking to the owner of the plate, Cincinnati Police Officer Sess issued a stolen-license-plate report, and appellant was charged with receiving stolen property.

While represented by counsel, appellant appeared in a lineup. He was identified by three of four witnesses to the robbery as the man who robbed the bank and was charged with aggravated robbery and robbery of the Franklin Savings and Loan Bank.

In appellant's first assignment of error, he challenges an alleged *ex parte* communication between the trial court and the jury during its deliberations. When reviewing the record, appellate counsel found a note, believed to contain the handwriting of the trial court and the jury foreperson, which reflected an inquiry as to whether the jury had to believe the defendant had a weapon, or whether they had to believe that the victims believed defendant had a weapon, and an answer referring the jury to the third line of a jury instruction it had been given. This error was not raised in the trial court, but was brought to this court's attention in appellant's brief and in a motion for remand to supplement the record. The motion for remand was denied, but this court, at oral argument, agreed to give appellant time to file a motion to supplement the record in the trial court. The motion was granted below, and appellant filed affidavits of the following people involved in his trial: a Hamilton County assistant prosecutor, the trial court's bailiff,[2] the defense counsel, and appellant.

---

2. The trial was presided over by a visiting judge.

We have reviewed the affidavits. The assistant prosecutor and court bailiff unequivocally aver that both appellant and his attorney were present when the question at issue was raised by the jury and presented to the trial court, and that neither objected to the question or answer. Defense counsel describes the situation and states that appellant was present during the discussion. Appellant swears that he did not agree to the court addressing any issue without the jury being reconvened and the question being made part of the record, that his counsel never discussed the trial court addressing any issue "with the jury deliberation" not being put on the record, and that he was present when the jury made a request for a magnifying glass out of the presence of a court reporter, and he requested that the court reporter be called in and the matter be made part of the record. Upon our review of the affidavits, we hold that reasonable minds could only conclude that there was no *ex parte* communication between the trial court and the jury. Thus, appellant's first assignment of error is overruled.

In his second assignment of error, appellant argues that the trial court erred in denying his Crim.R. 29 motion as to the aggravated robbery count and that the conviction on that count was both against the manifest weight of the evidence and unsupported by sufficient evidence.

An entry of judgment of acquittal pursuant to Crim.R. 29 is improper "if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, syllabus. In ruling on such a motion, the trial court must view the evidence in a light most favorable to the state. *State v. Evans* (1992), 63 Ohio St.3d 231, 248, 586 N.E.2d 1042, 1056. In determining a sufficiency-of-the-evidence claim, an appellate court must determine "whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 218–219, 485 N.E.2d 717, 720. Further, "[a] reviewing court will not reverse a jury verdict where there is substantial evidence upon which a jury could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132, syllabus. In reviewing a legal-sufficiency argument, a reviewing court cannot resolve evidentiary conflicts in favor of appellant or substitute its evaluation of witness credibility for the jury's. *State v. Waddy* (1992), 63 Ohio St.3d 424, 588 N.E.2d 819.

In reviewing a manifest-weight-of-the-evidence claim, on the other hand, an appellate court must review the entire record, weigh the evidence and

all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created a manifest miscarriage of justice. *State v. Martin, supra,* 20 Ohio App.3d at 174, 20 OBR at 217–218, 485 N.E.2d at 720. The weight to be given the evidence and the credibility of the witnesses are primarily left to the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.

The statute proscribing aggravated robbery, R.C. 2911.01 stated:

"(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after such attempt or offense, shall do either of the following:

"(1) Have a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code, on or about his person or under his control."

R.C. 2923.11 defines a "deadly weapon" as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." Appellant argues that there is no evidence to substantiate that appellant had a deadly weapon, *i.e.*, a handgun.

After reviewing the record pursuant to the standards set forth above, we conclude that, under the facts of this case, where appellant made several threats to "blow the heads off" the victims, with his hand or hands either concealed or used in a manner consistent with having a concealed gun, and where appellant was able to compel the surrender of the money based upon his actions and the victims' suspicions that he was armed and could carry out his threat, the state sufficiently proved the element of "deadly weapon" required by the statute. We recognize that "[f]or purposes of establishing the crime of aggravated robbery, a jury is entitled to draw all reasonable inferences from the evidence presented that the robbery was committed with the use of a gun * * *." *State v. Vondenberg* (1980), 61 Ohio St.2d 285, 15 O.O.3d 349, 401 N.E.2d 437, syllabus. While we also realize that evidence to prove a firearm specification involves evidence in addition to that required to establish aggravated robbery, *State v. Gaines* (1989), 46 Ohio St.3d 65, 545 N.E.2d 68, we find instructive to our determination under these facts the concurring opinion of Chief Justice Moyer in *State v. Murphy* (1990), 49 Ohio St.3d 206, 551 N.E.2d 932. Therein he said that where a person uses a gun and accompanying threats indicating that the gun can cause harm for the purpose of causing another to perform an act, that person cannot be "entitled to a conclusion as a matter of law that his words mean nothing." *Id.* at 210, 551 N.E.2d at 936. Likewise, one who indicates by word and conduct that he has a gun in his possession should not be entitled as a matter of law to the conclusion that such words and conduct have no meaning. We

cannot perceive why the proof of possession of a deadly weapon should require from a victim any more exact scrutiny of the actions of a perpetrator than that required to prove the operability of a weapon under the firearm specification. If a totality-of-the-circumstances test can be used to infer the operability of a gun, the same test would seem applicable to the actual possession of a deadly weapon in the commission of a robbery. Accord *State v. Cooper* (Mar. 22, 1995), Hamilton App. No. C–940350, unreported, 1995 WL 121443; *State v. Price* (1989), 52 Ohio App.3d 49, 556 N.E.2d 1200; *State v. Nelson* (Aug. 18, 1995), Montgomery App. No. 14775, unreported, 1995 WL 491084. But, see, *State v. Thompkins* (Nov. 22, 1995), Hamilton App. No. C–940513, unreported, 1995 WL 688789, discretionary appeal allowed (1996), 75 Ohio St.3d 1424, 662 N.E.2d 27█ Thus, under the facts of this case, we conclude that the trial court did not err in denying appellant's Crim.R. 29 motion, that the evidence was sufficient to support appellant's conviction of aggravated robbery, and that the jury did not lose its way in resolving conflicts in the evidence and create a manifest miscarriage of justice. Appellant's second assignment of error is overruled.

In his third assignment of error, appellant claims that the trial court erred in denying his motion to suppress identification testimony, because the lineup was so unnecessarily suggestive that it gave rise to a substantial likelihood of misidentification of appellant as the perpetrator. His argument is premised on the facts that none of the lineup participants, including himself, wore sunglasses or a jacket while appearing in the lineup, items that witnesses described the perpetrator as wearing; that the lineup participants were of varying heights; and that none had physical features similar to appellant, especially a nose as large as his.

The law is well settled:

"Before identification testimony is suppressed, the trial court must find that the procedure employed was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification. *Neil v. Biggers* (1972), 409 U.S. 188 [93 S.Ct. 375, 34 L.Ed.2d 401]. Reliability is the linchpin in determining the admissibility of identification testimony, and even if the identification procedure itself was suggestive, so long as the challenged identification itself is reliable, it is admissible. *Manson v. Brathwaite* (1977), 432 U.S. 98 [97 S.Ct. 2243, 53 L.Ed.2d 140]." *State v. Blackwell* (1984), 16 Ohio App.3d 100, 103, 16 OBR 106, 109–110, 474 N.E.2d 671, 674.

█ "It is the defendant's burden to prove that the procedures were both suggestive and unnecessary and that the testimony was or will be unreliable

under the totality of the circumstances test set forth in *Neil v. Biggers* (1972), 409 U.S. 188, 93 S.Ct. 375 [34 L.Ed.2d 401]." *State v. Brown* (Aug. 17, 1994), Hamilton App. No. C–930217, unreported, 1994 WL 442119. If defendant fails to satisfy the first part of that burden, we need not consider the totality-of-the-circumstances test set forth in *Neil v. Biggers, supra. Id.* See *State v. Dunham* (May 25, 1983), Hamilton App. No. C–820391, unreported, 1983 WL 8858.

 There is no assertion by appellant that the lineup was unnecessary. He contends only that it was unduly suggestive. We disagree. The witnesses were taken into a room to view the lineup. They were not allowed to speak to each other. They were immediately separated and subsequently interviewed. Each indicated to the interviewing officer why he or she had identified appellant as the perpetrator. One witness identified him through appellant's build and narrow face. Another recognized appellant by his walk, his voice, his build, and his chin and nose. Another witness stated he identified appellant by his size, his voice, his face, and his nose. Moreover, we have examined the photograph of the lineup in question and conclude that it was not improper. Appellant's third assignment of error is overruled.

 In his fourth assignment of error, which refers to appellant's *pro se* brief, several errors are listed. Only a few of the errors, however, are argued. We have not addressed those issues not argued, as is our prerogative pursuant to App.R. 12(A)(2). In his first argument appellant contends he was prejudiced by the trial court allowing "other acts" testimony in contravention of Evid.R. 404(B). The testimony appellant refers to includes evidence regarding the traffic incident with Lovett, including testimony of his fleeing from the security guard, photographs of Lovett's damaged automobile, and testimony concerning theft from appellant's brother's apartment.

The "other acts" evidence complained of by appellant is not governed by Evid.R. 404(B). It is axiomatic that:

"Evidence of other crimes is admissible when evidence of the other crime is so blended or connected with the crime on trial as the proof of one crime incidentally involves the other crime, or explains the circumstances, or tends logically to prove any element of the crime charged. *United States v. Bass* (C.A.8, 1986), 794 F.2d 1305, 1312; *United States v. Tate* (C.A.8, 1987), 821 F.2d 1328, 1331. The evidence is admissible as an integral part of the immediate context of the crime charged. *Bass, supra.* When the other crimes evidence is so integrated, it is not extrinsic and therefore is not governed by Evid.R. 404(B) and R.C. 2945.59. See *Bass, supra.*" *State v. Long* (1989), 64 Ohio App.3d 615, 617, 582 N.E.2d 626, 627. See *State v. Lowe* (1994), 69 Ohio St.3d 527, 531, 634 N.E.2d 616, 619.

The evidence concerning the automobile accident and subsequent conduct of appellant is "an integral part of the immediate context" of the armed robbery charge and tends "logically to prove" that the appellant was the perpetrator.

Evidence adduced demonstrated that appellant fled to and was located at an apartment complex where, according to a witness called by appellant, his brother had an apartment from which the key and several other items were missing. Another witness testified that appellant entered his brother's apartment with a key prior to running out the back door. While we deem this evidence to be proper, we agree with appellant that it was improper for the prosecutor to state in closing argument that evidence of theft from the brother's apartment should be considered even though appellant was never charged with the theft. After reading the record, however, we are not convinced that the improper comment "prejudicially affected substantial rights of the accused" so that he was denied a fair trial. See *State v. Lott* (1990), 51 Ohio St.3d 160, 165, 555 N.E.2d 293, 300.

In his second issue under this assignment of error, appellant contends that the trial court should have provided a limiting instruction regarding the alleged "other acts" evidence. Because of our conclusion that the evidence complained of was offered to prove facts other than conforming conduct, this issue is moot. Appellant's assignment of error is overruled.

In his last assignment of error appellant claims that the convictions are not supported by sufficient evidence. The arguments in support, however, focus on the "unreliable and contradicted evidence." This raises a claim of manifest weight of the evidence. Keeping in mind that the weight to be given the evidence and the credibility of the witnesses are primarily left to the trier of fact, *State v. DeHass, supra,* and that the trier of fact is free to believe all, part or none of the testimony of each witness appearing before it, *State v. Antill* (1964), 176 Ohio St. 61, 26 O.O.2d 366, 197 N.E.2d 548, we have reviewed the entire record, weighed the evidence and all reasonable inferences, considered the credibility of the witnesses, and determined that, in resolving conflicts in the evidence, the jury did not clearly lose its way and create a manifest miscarriage of justice. See *State v. Martin, supra,* 20 Ohio App.3d at 174, 20 OBR at 217–218, 485 N.E.2d at 720.

Appellant also argues in this assignment of error that the trial court erred by not dismissing the stolen-property count. Appellant raised this argument at trial pursuant to Crim.R. 29. The trial court denied the motion both at the close of the state's evidence and at the close of all the evidence, based on the fact that "there [was] evidence from which the jury could make a determination either way." Having reviewed the record, including the testimony of the owner

of the license plate that the plate recovered was his, and that he had reported it stolen May 15, 1995 from an automobile parked at the apartment complex where appellant was arrested and where his brother leased an apartment, and the testimony that the license was recovered from inside appellant's car, we agree with the trial court that the evidence was sufficient to overcome a Crim.R. 29 motion made at the close of the state's evidence.

We also agree with the trial court that, following the close of all the evidence, which included testimony provided by appellant's wife that on June 13, 1995, a man who helped appellant fix his car provided appellant with the license plate because two days previously his outdated temporary tag had been taken by the police, the evidence was such that reasonable minds could reach different conclusions as to whether each material element of the receiving-stolen-property charge had been proved beyond a reasonable doubt. See *State v. Bridgeman, supra.* Appellant's fourth assignment of error is overruled.

Accordingly, the judgment of the trial court is affirmed.

*Judgment affirmed.*

SUNDERMANN, J., concurs.

PAINTER, P.J., concurs in part and dissents in part.

RAYMOND E. SHANNON, J., retired, of the First Appellate District, sitting by assignment.

PAINTER, Presiding Judge, concurring in part and dissenting in part.

I dissent, only on the issue of the alleged weapon. If the statutory law admitted of the result reached by my colleagues, I would gladly join therein; it does not, so I dissent. Even the state agrees that no Ohio court has gone so far as this court does today in conjuring up a firearm.

Now we have held that brandishing a paper envelope, together with a threat, is proof beyond a reasonable doubt not only that there was something in the envelope, and that something was a deadly weapon under R.C. 2923.11(A), but also that the deadly weapon was a firearm "capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant," as required by R.C. 2923.11(B)(1). I recoil from such sophistry.