JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant Antwone Garrett ("appellant") appeals the decision of the lower court. Having reviewed the arguments of the parties and the pertinent law, we hereby affirm the lower court.
 I. {¶ 2} According to the case, on June 29, 2006, the Grand Jury returned a one-count indictment for failure to comply, in violation of R.C. 2921.331 and a felony of the third degree, against appellant. Appellant filed a pretrial motion to suppress identification testimony, which was heard in open court and denied by the trial court on November 27, 2006. A jury trial commenced on November 29, 2006. The trial court overruled appellant's motion for acquittal under Rule 29 at the close of the state's evidence, and the jury returned a verdict of guilty as charged on December 4, 2006. Appellant was sentenced on June 27, 2007 to three years at the Lorain Correctional Institute and was advised of his appellate rights and his postrelease control restrictions.
 {¶ 3} Appellant was found guilty of failure to comply with the order or signal of a police officer. The state presented four witnesses, all of which were Cleveland *Page 4 
police officers. The defense called no witnesses. On November 27th, the state orally requested that appellant clarify what the alleged unconstitutional conduct was by the Cleveland police officer that was the subject of the appellant's motion to suppress. The appellant argued that the arrest was unlawful prior to his identification at the police station and that the identification procedure at the station was also unduly suggestive. The state then called Lieutenant Thomas Stacho to the stand as the first witness.
 {¶ 4} Lieutenant Stacho stated that he was working off duty on June 18, 2006 at Bo Loong restaurant at 3922 St. Clair Avenue when he observed one vehicle and then a second vehicle pull into the lot. Both drivers exited their cars, and the driver of the Pontiac Aztec ("Aztec") went to the rear of the car and pulled something concealed in fabric out of the trunk, placing it under the front seat of the Aztec. Both individuals then entered the Aztec and drove westbound on St. Clair Avenue. Lieutenant Stacho then called Officer Skernivitz who was on patrol in the third district and relayed his observations of the individuals, the vehicle description, and his observations of the way the driver of the Aztec was gripping this object and that it had "* * * a 90-degree angle with the large end pointing away * * *."[1]
 {¶ 5} Lieutenant Stacho further testified that he was 30 to 40 feet away from the two individuals and there was light from a spotlight and from streetlights and other sources in the Bo Loong parking lot. He stated that he had a clear line of sight *Page 5 
and that those two were the only other people in the lot besides him. Lieutenant Stacho stated that he described the driver of the Aztec to Officer Skernivitz as a "light skinned," smaller in stature black male who was wearing "large flashy eyeglasses" that were gold in color. Lieutenant Stacho said that the appellant in court appeared to be the driver of the Aztec but could not be certain.
 {¶ 6} Lieutenant Stacho testified that after the vehicle was stopped, he received a call from Officer Skernivitz and verified the description of the driver in his conversation with him. Lieutenant Stacho stated that the officers returned about 20 minutes later with the passenger who had jumped out of the Aztec after the stop. Lieutenant Stacho confirmed that he was not the described driver of the Aztec. The male returned to Bo Loong, was checked for warrants, and eventually left in the other vehicle that had remained at the restaurant.
 {¶ 7} Officer James Skernivitz, a patrol officer in the third district for the last eight years, testified on behalf of the state. He received a phone call from Lieutenant Stacho describing the car, the males' appearance, and the suspect vehicle's direction, which was westbound on St. Clair Avenue. Officer Skernivitz, driving the marked patrol car along with his partner, Officer Sako, then headed eastbound on St. Clair Avenue where they almost immediately passed the described vehicle coming in the other direction. Officer Skernivitz turned the patrol car around and initiated a traffic stop with lights and siren near the Galleria on St. Clair Avenue. *Page 6 
 {¶ 8} Officer Skernivitz approached the driver's side of the Aztec, and his partner approached the passenger side where he observed two males in the vehicle. He asked the driver for his license and then asked him if it was his vehicle. Officer Skernivitz testified that the driver said that it was his girlfriend's vehicle. Officer Skernivitz told the driver that they would be right back, and he and Officer Sako returned to the patrol car. Officer Skernivitz asked the driver to step out of the vehicle. The driver asked why. Officer Skernivitz responded that he wanted to further confer with him. The driver then opened the door and exited the vehicle and asked, "* * * What am I getting out for? What are you asking me to get out for? * * *"[2]
 {¶ 9} Officer Skernivitz told him that he wanted to confer with him and asked him to "* * * step back here with me." The driver began to reach into his waistband and Officer Skernivitz instructed him not to reach for anything and again requested that he "come back here with me." At that time the driver jumped back into the car and drove away. The officers ran back to their car in order to pursue the Aztec. The officers observed the vehicle briefly stopping after 50 to 100 feet where the passenger bailed from the vehicle. Officer Skernivitz stopped the patrol car and Officer Sako quickly patted down and placed the passenger in the back of the patrol car. The patrol car left to pursue the Aztec which was heading westbound on St. Clair Avenue at a high rate of speed, approximately 70-to-80 m.p.h., and ran several red lights. The police lost sight of the Aztec and terminated their pursuit. The *Page 7 
officers returned to the Bo Loong restaurant with the passenger, identified as Edwin Peavy. Officer Skernivitz testified that he received a call a day or two later that the vehicle had been stopped in the second district and that a male had been arrested. Officer Skernivitz testified that he immediately recognized appellant in the booking room at the second district without question.
 {¶ 10} Officer Gary Helscel testified that he was a ten-year veteran of the Cleveland Police Department and was assigned to the first district. He stated that he had received a broadcast about a pursuit downtown on June 18, 2006, that included a description of the vehicle, the driver, and the vehicle's license number. He testified that he observed a vehicle matching the description in the broadcast and with the same license number on Carrington Road in Cleveland on June 20, 2006. While observing the vehicle, he also noted that the operator had made a left-hand turn onto West 130th Street without signaling.
 {¶ 11} A traffic stop was initiated and the operator stated to the officer that he did not have a driver's license on him, and the officers had the operator exit the vehicle and sit in the back of the zone car. The name Antwone Garrett and social security number provided by the driver came back as an individual with no driving privileges, which the officer testified as an arrestable offense. Officer Helscel testified that the driver was cited for "* * * driving under suspension and not using a turn signal and not wearing a seat belt." The officer testified that the vehicle was registered to Ebony Johnson with an address on Carrington Road. Officer Helscel identified the appellant in court as the operator of the Aztec on that day. *Page 8 
 II. {¶ 12} Appellant's first assignment of error provides the following: "The trial court erred when it overruled appellant's motion to suppress identification testimony."
 {¶ 13} Appellant's second assignment of error provides the following: "The trial court erred to appellant's prejudice in violation of theSixth and Fourteenth amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution when it failed to conduct an in camera inspection of the officer's observations."
 {¶ 14} Appellant's third assignment of error provides the following: "The evidence was insufficient as a matter of law to support a finding beyond a reasonable doubt that appellant was guilty of the failure to comply with the order or signal of a police officer."
 {¶ 15} Appellant's fourth assignment of error provides the following: "Appellant's conviction for failure to comply with the order or signal of a police officer was against the manifest weight of the evidence."
 III. {¶ 16} Appellant argues in his first assignment of error that the trial court erred when it overruled his motion to suppress identification testimony. To suppress identification testimony, the trial court must find that "the procedure employed was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification." Neil v. Biggers (1972), 409 U.S. 188, 93 S.Ct. 375,34 L.Ed.2d 401; State v. Green (1996), 117 Ohio App.3d 644, 652,691 N.E.2d 316, 321-322, *Page 9 
jurisdictional motion overruled (1997), 78 Ohio St.3d 1495,678 N.E.2d 1231. As stated by the United States Supreme Court, "reliability is the linchpin in determining the admissibility of identification testimony, and even if the identification procedure itself was suggestive, so long as the challenged identification itself is reliable, it is admissible."Manson v. Brathwaite (1977), 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140;Green, supra.
 {¶ 17} Appellant argues that his conviction hinged on an identification produced by unduly suggestive identification procedures and was unreliable under the circumstances. In the instant case, we cannot say that the identification was unduly suggestive or unreliable.
 {¶ 18} Lieutenant Stacho has been with the Cleveland Police Department since 1992 and has made hundreds, if not thousands, of arrests during his career. He has had numerous occasions to identify suspects as part of his job and has received training in the identification of individuals. Appellant failed to demonstrate any error on the part of the lower court with regard to its ruling concerning Lieutenant Stacho's testimony.
 {¶ 19} In addition to Lieutenant Stacho's testimony, Officer Skernivitz testified during the motion to suppress that he has made hundreds of arrests and has been in the department since 1998. Officer Skernivitz further testified that appellant was in the booking room when he arrived with Officer Sako and that he immediately recognized him. Officer Skernivitz also testified that he does not draw conclusions by virtue of a person's presence in a police station or holding cell, and is not *Page 10 
intimidated by being in a police facility or a holding facility. Officer Skernivitz stated that he did not know exactly who he was going to see at the second district. He also stated that he was told that the vehicle he pursued had been stopped, and a suspect was under arrest in connection with a traffic offense.
 {¶ 20} Appellant argues that no greater weight should be given to the testimony simply because they are police officers. However, nothing in the record demonstrates that occurred. The trial court simply considered the fact that the individuals who testified were police officers who were, therefore, less likely to draw conclusions solely because an individual is present in a police station or holding cell. Police officers work in police stations everyday and are, therefore, far less likely to be intimidated simply by being in a police facility or a holding facility.
 {¶ 21} Having reviewed the evidence relating to the case at bar, we find appellant's argument to be without merit. Officer Skernivitz testified that he was speaking directly to the driver while standing next to the vehicle for a minute or minute and a half before returning to the vehicle a second time. He stated that brought him face-to-face with the driver a second time. Officer Skernivitz stated that there was street lighting and illumination from the police vehicle's spotlight on the scene.
 {¶ 22} Officer Skernivitz is a veteran police officer with training and experience in the identification of individuals in similar situations. Officer Skernivitz identified the driver's complexion, tattoos, clothing, and glasses. He immediately and definitively recognized appellant. In addition, Officer Skernivitz later identified appellant at the *Page 11 
second district on June 20th after stopping and pursing him just two days earlier on June 18th . Similarly, we find Lieutenant Sako's testimony to be proper.
 {¶ 23} Accordingly, we find no error on the part of the lower court's denial of appellant's motion to suppress identification testimony. Nothing in the evidence demonstrates that the procedure was unduly suggestive or produced unreliable pretrial or in-court identifications of appellant. Given the reliability of the officers' testimony, we hold that the trial court properly denied the motion to suppress.
 {¶ 24} Appellant's first assignment of error is overruled.
 {¶ 25} Appellant argues in his second assignment of error that the lower court erred to his prejudice when it failed to conduct an in camera inspection of the officer's observations. A defendant is entitled to a Crim. R. 16(B)(1)(g) in camera inspection of a witness' prior written or recorded statement if it is requested after the direct examination of that witness, but before the completion of cross-examination. State v. Schnipper (1986), 22 Ohio St.3d 158,22 Ohio B. 232, 489 N.E.2d 820. However, reports or notes taken by a police officer during an interview with a victim or witness in a case are not considered a statement for the purposes of Crim. R. 16(B)(1)(g). Police reports may be considered statements in this context only where the document is the author's own observations and recollection of the events. State v. Jenkins, (1984), 15 Ohio St.3d 164, 15 Ohio B. 311,473 N.E.2d 264. If evidence is not generally discoverable under Crim. R. 16(B)(2), it will not be available for use under Crim. R. 16(B)(1)(g); for example, those portions of a police report which contain officer's notes regarding witnesses' statements, officer's investigative *Page 12 
decisions, interpretations and interpolations are excluded from discovery under Crim. R. 16(B)(2). State v. Atwood (Mar. 22, 1990), Cuyahoga App. No. 56692; State v. Gray, Cuyahoga App. No. 82045, 2003-Ohio-4670.
 {¶ 26} The record in this case demonstrates that defense counsel was in possession of a typed "RMS" report generated from the written field report prepared by Officer Sako.[3] Officer Skernivitz stated that his partner had prepared an "incident report," but he read the typed report in defense counsel's possession and believed it was accurate. The lower court permitted defense counsel to show the same document to Officer Skernivitz, who stated that the document was not the actual field report but that the reports are typed by the report center from information provided to them. He further said that he had no reason to dispute that this was a typed version of the field report that his partner had prepared.
 {¶ 27} The court then dismissed the jury for the afternoon to hold a hearing on the subject document. The cross-examination of Officer Skernivitz resumed on Thursday, November 30, 2006, and the officer again stated that the typed report in defense counsel's possession was an accurate typed copy of the incident report that his partner had prepared. Defense counsel cross-examined Officer Skernivitz about the reported time, which the officer explained was the "CAD" number documenting a previous detail that he and his partner were assigned to investigate. The officer *Page 13 
testified that his duty report was filed in the district and it would show what he and his partner were doing between 1:30 a.m. and 2:20 a.m.
 {¶ 28} After the direct examination of Officer Sako, the trial court reviewed the handwritten field report prepared by Officer Sako, with defense counsel present and participating. The lower court found that there were no material inconsistencies or any other information contained therein that was considered exculpatory. On cross-examination, Officer Sako testified that he did not review the handwritten report but reviewed the same typed "RMS" report, prior to testifying, that defense counsel had in his possession. The handwritten field report was then sealed for appellate review.
 {¶ 29} A review of the evidence in this case demonstrates that an in camera inspection of the handwritten field report was conducted. The lower court did not determine that the report contained any material inconsistency or exculpatory material.
 {¶ 30} Accordingly, appellant's second assignment of error is without merit.
 {¶ 31} Appellant argues in his third assignment of error that the evidence was insufficient to support a finding that appellant was guilty of the failure to comply with the order of a police officer. Appellant argues in his fourth assignment of error that his conviction for failure to comply with the order or signal of a police officer was against the manifest weight of the evidence.
 {¶ 32} Due to the substantial interrelation between appellant's last two assignments of error, we shall address them together below. When reviewing a claim that there is insufficient evidence to support a conviction, we view the evidence *Page 14 
in a light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1981),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 33} When reviewing a claim that a verdict is against the manifest weight of the evidence, we weigh all the reasonable inferences, consider the credibility of witnesses and, in considering conflicts in the evidence, determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. In doing so, we remain mindful that the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. The trier of fact has the authority to "believe or disbelieve any witness or accept part of what a witness says and reject the rest." State v. Antill(1964), 176 Ohio St. 61, 67, 197 N.E.2d 548.
 {¶ 34} R.C. 2921.331(B) provides the following:
 "No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop."
 {¶ 35} The state also had to prove the further finding in R.C. 2921.331(C)(5)(a)(ii), which states: "The operation of the motor vehicle caused a substantial risk of serious physical harm to persons or property." *Page 15 
 {¶ 36} Viewing the evidence in a light most favorable to the state, we conclude that the state presented sufficient evidence from which a rational trier of fact could conclude that appellant was guilty of failure to comply with order or signal of police officer, in violation of R.C. 2921.331(B).
 {¶ 37} Appellant's identity as the driver of the Aztec is supported and corroborated by the direct eyewitness testimony of multiple credible witnesses. Lieutenant Stacho testified that he relayed a general description of the males to Officer Skernivitz, including the driver of the Aztec. Officer Skernivitz testified that the area was well lit by streetlights, lights from the Galleria, and the driver's side spotlight.
 {¶ 38} Officer Skernivitz stated that he spoke to the driver and looked directly at his face for approximately a minute the first time and another minute and a half the second time. Officer Skernivitz described the driver as wearing a green short-sleeved polo shirt over blue jeans, with gold glasses and tattoos, and further identified the driver in court as appellant.
 {¶ 39} Officer Skernivitz's testimony was consistent with Officer Sako's testimony and identification of appellant as the driver of the Aztec. In addition, Officer Sako testified to the direction the Aztec traveled and to the fact that the vehicle sped through several red lights and nearly caused an accident. Officer Sako testified that he has 17 years of practical experience and training in the police academy estimating vehicle speeds. He testified that the vehicle was traveling at 50 to 60 m.p.h., reaching 80 m.p.h. at various times during the chase. Officer Sako *Page 16 
testified that the speed limit throughout the chase route was 25 m.p.h. until East 30th Street, where it changed to 35 m.p.h.
 {¶ 40} Officer Sako testified that two days later he accompanied Officer Skernivitz to the second district and immediately identified appellant, who was standing at the booking window. Officer Sako positively identified appellant in open court. Officer Sako further testified that he observed appellant discard the gold glasses that he was wearing the night of the traffic stop under a bench. He also testified that he saw appellant at an earlier pretrial appearance wearing the same green polo shirt he was wearing at the time of the traffic stop. In addition, Officer Nagy produced the glasses taken from appellant at the time of his arrest, and both officers Skernivitz and Nagy recognized the glasses.
 {¶ 41} There is nothing in the record to indicate that the evidence in this case is anything but legally sufficient to support the verdict. Furthermore, there is nothing in the record suggesting that the trial court lost its way and created a miscarriage of justice requiring a reversal of appellant's conviction.
 {¶ 42} Accordingly, appellant's third and fourth assignments of error are overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any *Page 17 
bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, A.J., and KENNETH A. ROCCO, J., CONCUR
[1] Tr. 28-29.
[2] Tr. 38-39.
[3] Tr. 386. *Page 1