[Cite as *State v. Flagg*, 2019-Ohio-3032.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLEE,                CASE NO. 9-18-43

     v.

ANDREW FLAGG,                    O P I N I O N

     DEFENDANT-APPELLANT.

**Appeal from Marion County Common Pleas Court**
**Trial Court No. 18-CR-0327**

**Judgment Affirmed**

**Date of Decision: July 29, 2019**

APPEARANCES:

    *Todd A. Workman* **for Appellant**

    *Nathan R. Heiser* **for Appellee**

**SHAW, J.**

{¶1} Defendant-appellant, Andrew A. Flagg ("Flagg"), brings this appeal from the October 23, 2018, judgment of the Marion County Common Pleas Court sentencing him to twelve months of community control after Flagg was convicted in a jury trial of two counts of Forgery in violation of R.C. 2913.31(A)(3), both felonies of the fifth degree. On appeal, Flagg argues that the trial court erred by overruling his suppression motion.

*Background*

{¶2} On June 27, 2018, Flagg was indicted for two counts of Forgery in violation of R.C. 2913.31(A)(3), both felonies of the fifth degree. It was alleged that Flagg presented a counterfeit $100 bill as payment at a minimart in Marion County on January 14, 2018, and that Flagg presented a counterfeit $100 bill as payment at an Amish store in Hardin County on January 18, 2018. In both instances, the bills were accepted as payment. The charges were indicted together in Marion County as part of an ongoing course of criminal conduct. Flagg pled not guilty to the charges.

{¶3} Prior to trial, Flagg filed a suppression motion contending that officers in Marion County conducted a photo lineup with the cashier who accepted the $100 bill at the minimart, and that the lineup was not in compliance with the statutory procedures for photo lineups codified in R.C. 2933.83. In addition, Flagg argued

that different officers in Hardin County conducted a photo lineup with the cashier who accepted the $100 bill at the Amish store, and that lineup even more egregiously failed to comply with the statutory procedures codified in R.C. 2933.83.

{¶4} The State filed a memorandum in opposition to Flagg's suppression motion, arguing that the statutory procedures were largely complied with, particularly in the Marion County lineup, and that even if the photo lineups were not in compliance with the statute, the lineups were not unduly suggestive such that they warranted suppression. The State contended that a jury instruction as mentioned in R.C. 2933.83 was the appropriate remedy for failure to comply with R.C. 2933.83 when the photo lineups were not unduly suggestive.

{¶5} On September 21, 2018, a suppression hearing was held. At the hearing, the State presented the testimony of officers from the Hardin County Sheriff's Office who conducted a photo lineup with Marie H., the 17-year old girl from the Amish store who had accepted the $100 bill on January 18, 2018, and an officer from the Marion County Sheriff's Office who prepared the photo lineup for Sharon W., the woman from the minimart in Marion County who accepted the $100 bill on January 14, 2018. Unlike the Hardin County photo lineup, the Marion County lineup was given by a blind administrator, who did not know the identity of the purported suspect.[1] The State also presented the testimony of Marie and Sharon

---

[1] The blind administrator testified at trial but not at the suppression hearing.

regarding the lineups themselves.  Both indicated that the officers did not attempt to influence them, and that they were extremely confident in their selection of Flagg's photograph.

{¶6} At the conclusion of the hearing, the trial court overruled the suppression motion.  In its entry on the matter, the trial court stated as follows.

> **Based on the evidence presented, the Court finds that two photo lineups were presented in this case, neither of which fully complied with the procedures required by R.C. 2933.83. However, there was no evidence that either identification procedure was unduly suggestive.  It is therefore ORDERED that the Defendant's motion to suppress is denied.**

{¶7} However, the trial court did determine that Flagg would be permitted to present evidence at trial of law enforcement's failure to comply with the statutory procedures, and that failure to follow the procedures could be considered by the jury in determining the reliability of the identification testimony pursuant to R.C. 2933.83(C).  The trial court also indicated that the jury would receive an instruction on the matter.

{¶8} Flagg's case proceeded to trial on September 25-26, 2018.  Regarding the incident in Marion County, the State presented the testimony of Sharon W., who worked at the LaRue minimart in Marion County and accepted the $100 bill from Flagg on January 14, 2018.  She testified that she did not know Flagg's name, but he had been in the store multiple times in the past so she recognized him.  She testified that the $100 bill he presented had questionable pink writing on it, and that

she thought it seemed like it had been "laundered several times." (Tr. at 213). Sharon testified that she asked Flagg where he got it, and he said he had received it from "one of the cash places." (*Id.*) Sharon testified that while she usually used a special pen to mark the bills to see if they were legitimate, the pen was not readily nearby and she ultimately accepted the bill. Sharon identified Flagg in court as the man who provided the bill to her.

{¶9} Sharon testified that she was shown a photo lineup a few days after the incident and that she was "100 percent" certain that she had identified the correct person in the photo lineup. She testified she was not influenced by the detective who showed her the photographs.

{¶10} The Marion County Officers who were involved with the photo lineup testified at trial. Detective Craig Layne testified as to how he put the photo lineup together. A database called OLEG was used to generate photographs of males with a similar height, weight, and hair color to Flagg. Flagg's photograph was then placed alone in one folder, then the five other photographs of different individuals were placed in separate individual folders. Four folders with blank pages in them were also included in the stack of folders, so that there were ten folders total that would be provided to Sharon.[2] The folders were then given to a blind administrator who did not know the identity of the suspect, and the blind administrator conducted

---

[2] The trial court stated that the purpose of the use of the blank pages is so that the person doing the identification does not know how many individuals she is about to view.

the photo lineup with Sharon. There was some ambiguity about whether the blind administrator handed all of the folders to Sharon at once in contravention of the statute, or handed them to her one at a time, and as to whether Sharon viewed the photographs in the administrator's presence or a few feet away. Regardless, the administrator did not know the alleged perpetrator, and Sharon identified Flagg, stating that she was 100 hundred percent certain it was him.

{¶11} As to the Hardin County incident, the State presented the testimony of Marie H., whose Amish family owned and operated a small grocery store on their property. Marie testified that a man came into the store on January 18, 2018, and asked if she could make change for $100.[3] Marie indicated that it depended on how much he bought, and that the man then purchased roughly $50 worth of goods. Marie affirmatively identified Flagg at trial as that man. Marie testified that Flagg produced a $100 bill that she felt was suspicious so she got his license plate number when he left and wrote it on her hand. She then showed her brother the $100 bill, and he told her it was fake, so the police were informed. Marie also made a list of things that Flagg had purchased from the store, and gave it to law enforcement. A number of the items were found in Flagg's home when it was subsequently

---

[3] Marie testified that Flagg was with a woman at the time.

searched, along with a fake $100 bill and a fake $20 bill. The fake $100 bill that was found was consistent with the ones that had been used in his prior purchases.[4]

{¶12} Hardin County officers administered their own photo lineup to Marie, and they testified regarding that lineup at trial. Detective Scott Willoby indicated that he put the lineup together by pulling photographs of males with a similar height, weight, and hair color to Flagg from the OLEG database. He indicated that he placed Flagg's photograph in one folder, then placed five other photographs of different individuals in separate folders. Four folders with blank pages in them were also used, so that there were ten folders total that would be given to Marie.

{¶13} Detective Willoby testified that he went with Deputy Joe Carl to Marie's house[5], and that the photo lineup was administered at the kitchen table. Detective Willoby admitted that a blind administrator was not used pursuant to statute, stating that their Sheriff's Office was small and short-staffed, and that while it was possible that they could have gotten a blind administrator, he preferred to get the lineup done as soon as possible.

{¶14} Detective Willoby's testimony revealed that there were multiple areas where the Hardin County photo lineup was not compliant with the statute. He

---

[4] John Timmons testified at trial that he purchased fake money for his children in the fall of 2017 on wish.com. He testified that he wanted his children to learn to count money and "play store." He indicated that he received hundreds and twenties, but they had bright pink Chinese writing on them. Timmons testified that his children passed them out to other children in the neighborhood, including Flagg's children. When the police came to speak with him, Timmons turned over the fake money he had remaining in the house.
[5] They also had an intern with them.

indicated that Marie's parents were present at the time of the lineup, that he never said that the suspect may not be in the lineup, that he explained how the photographs were generated before presenting the lineup to Marie, and that he told Marie at the outset to go through the lineup twice even though she was only supposed to do it once unless she requested to do so again. Marie identified Flagg's photo and stated that she was almost positive that it was him. She testified that the officers did not do anything to assist her identification.

{¶15} The trial court gave an instruction to the jury during the trial indicating that it could consider the police officers' noncompliance with the law when evaluating the credibility of the photo lineup identification. At that time, the trial court actually stated all of the statutory requirements of R.C. 2933.83 to the jury. In fact, at one point during a witness's testimony regarding the photo lineup, the trial court questioned the procedure and asked the witness if the procedure was inconsistent with the statute. The witness admitted that it was, thus the trial court helped emphasize the officer's noncompliance.

{¶16} After the parties rested their cases, the trial court again provided a lengthy jury instruction regarding the photo lineup procedures. Nevertheless, the jury returned guilty verdicts on both Forgery counts, specifically finding with regard to the Hardin County incident that Marion County had jurisdiction to hear the case as part of an ongoing course of criminal conduct.

**{¶17}** On October 19, 2018, the matter proceeded to sentencing. Flagg was placed on twelve months of community control on each count, with a number of specified conditions. He was notified that if he violated his community control he would receive nine months in prison on each count. A judgment entry memorializing Flagg's sentence was filed October 23, 2018. It is from this judgment that Flagg appeals, asserting the following assignment of error for our review.

**Assignment of Error**
**The trial court erred by failing to suppress evidence of identification of Appellant from an improper photo lineup that was unduly suggestive and violated the Constitutional rights of Appellant.**

**{¶18}** In Flagg's assignment of error, he argues that the trial court erred in overruling his suppression motion. Specifically, he contends that the Hardin County photo lineup blatantly disregarded the rules for administering a photo lineup pursuant to R.C. 2933.83, that the photo lineup was unduly suggestive, and that given the totality of circumstances there was clear opportunity for misidentification.

Standard of Review

**{¶19}** "Appellate review of a decision on a motion to suppress presents a mixed question of law and fact." *State v. Burnside,* 100 Ohio St.3d 152, 2003–Ohio–5372, ¶ 8. The trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight to be given to the evidence

presented. *State v. Johnson,* 137 Ohio App.3d 847, 850 (12th Dist.2000). Therefore, when an appellate court reviews a trial court's ruling on a motion to suppress, it must accept the trial court's findings of facts so long as they are supported by competent, credible evidence. *State v. Roberts,* 110 Ohio St.3d 71, 2006–Ohio–3665, ¶ 100. The appellate court must then review the application of the law to the facts de novo. *Burnside* at ¶ 8.

{¶20} In specifically adjudicating a motion to suppress eyewitness identifications under R.C. 2933.83(C)(1), a trial court must consider evidence of a failure to comply with the required array procedures. However, the statute does not provide an independent basis to suppress evidence, and a trial court errs in solely relying on the statute in suppressing an identification. *State v. Lindsey*, 8th Dist. Cuyahoga No. 106111, 2019-Ohio-782, ¶ 67. The overriding analysis remains whether the procedure was "impermissibly suggestive." *State v. Wells*, 8th Dist. Cuyahoga No. 98388, 2013-Ohio-3722, ¶ 84, citing *State v. Henry*, 6th Dist. Lucas No. L-11-1157, 2012-Ohio-5552 (failure to strictly comply with blind administrator component does not necessarily result in reversible error).

{¶21} Regarding the admissibility of identification testimony in general, courts have adopted a two-prong test. *State v. Lindsey*, 8th Dist. Cuyahoga No. 106111, 2019-Ohio-782, ¶ 68. First, the trial court must determine whether the identification procedures were so impermissibly suggestive as to give rise to a

substantial likelihood of misidentification. *Id*. citing *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Second, the trial court must determine whether the identification itself was unreliable under the totality of the circumstances. *Id*. If the defendant fails to meet the first part of his burden that the procedures used were unduly suggestive, the court need not consider the totality of the circumstances under the second prong. *State v. Tate*, 8th Dist. Cuyahoga No. 103446, 2016-Ohio-5622, 70 N.E.3d 1056, ¶ 31, citing *State v. Green*, 117 Ohio App.3d 644, 691 N.E.2d 316 (1st Dist.1996). If the pretrial procedures were not unduly suggestive, any remaining questions as to reliability go to the weight of the identification, *not* its admissibility. *Id.*

{¶22} If, on the other hand, the defendant establishes that the pretrial identification procedure was unduly suggestive, the court must then consider whether the identification, viewed under the totality of the circumstances, was reliable. To determine reliability, the United States Supreme Court instructs courts to consider the following factors: the opportunity of the witness to view the perpetrator at the time of the offense, the witness's degree of attention, the accuracy of the witness's prior description of the perpetrator, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. *Neil v. Biggers*, 409 U.S. 188, 199-200, 93 S.Ct. 375 (1972).

R.C. 2933.83

**{¶23}** Revised Code 2933.83(B) codifies the specific procedures that law enforcement officers are supposed to follow when conducting a photo lineup. It reads as follows.[6]

**(B)  Prior to conducting any live lineup or photo lineup on or after the effective date of this section, any law enforcement agency or criminal justice entity in this state that conducts live lineups or photo lineups shall adopt specific procedures for conducting the lineups. The procedures, at a minimum, shall impose the following requirements:**

**(1)   Unless impracticable, a blind or blinded administrator shall conduct the live lineup or photo lineup.**

**(2)   When it is impracticable for a blind administrator to conduct the live lineup or photo lineup, the administrator shall state in writing the reason for that impracticability.**

**(3)   When it is impracticable for either a blind or blinded administrator to conduct the live lineup or photo lineup, the administrator shall state in writing the reason for that impracticability.**

**(4)   The administrator conducting the lineup shall make a written record that includes all of the following information:**

**(a)   All identification and nonidentification results obtained during the lineup, signed by the eyewitnesses, including the eyewitnesses' confidence statements made immediately at the time of the identification;**

**(b)   The names of all persons present at the lineup;**

---

[6] The definitions for specific words and phrases are codified in R.C. 2933.83(A).

**(c)    The date and time of the lineup;**

**(d)    Any eyewitness identification of one or more fillers in the lineup;**

**(e)    The names of the lineup members and other relevant identifying information, and the sources of all photographs or persons used in the lineup.**

**(5)    If a blind administrator is conducting the live lineup or the photo lineup, the administrator shall inform the eyewitness that the suspect may or may not be in the lineup and that the administrator does not know who the suspect is.**

{¶24} Revised Code 2933.83(C) contains provisions that deal with failure to comply with the appropriate minimal photo lineup procedures.

**(C) For any photo lineup or live lineup that is administered on or after the effective date of this section, all of the following apply:**

**(1)    Evidence of a failure to comply with any of the provisions of this section or with any procedure for conducting lineups that has been adopted by a law enforcement agency or criminal justice agency pursuant to division (B) of this section and that conforms to any provision of divisions (B)(1) to (5) of this section shall be considered by trial courts in adjudicating motions to suppress eyewitness identification resulting from or related to the lineup.**

**(2)    Evidence of a failure to comply with any of the provisions of this section or with any procedure for conducting lineups that has been adopted by a law enforcement agency or criminal justice agency pursuant to division (B) of this section and that conforms to any provision of divisions (B)(1) to (5) of this section shall be admissible in support of any claim of eyewitness misidentification resulting from or related to the lineup as long as that evidence otherwise is admissible.**

Case No. 9-18-43

**(3) When evidence of a failure to comply with any of the provisions of this section, or with any procedure for conducting lineups that has been adopted by a law enforcement agency or criminal justice agency pursuant to division (B) of this section and that conforms to any provision of divisions (B)(1) to (5) of this section, is presented at trial, the jury shall be instructed that it may consider credible evidence of noncompliance in determining the reliability of any eyewitness identification resulting from or related to the lineup.**

Analysis

**{¶25}** In this case, Flagg argues that the photo lineup in Hardin County was not in compliance with R.C. 2933.83, and that the trial court erred by denying his suppression motion. Notably, despite the broad statement of his assignment of error contending that the trial court should have suppressed both of the photo lineups in this matter, Flagg actually concedes in his brief that the Marion county lineup was "administered for the most part, in compliance with ORC 2933.83." (Appt.'s Br. at 9). Thus he focuses his argument on contending that the Hardin County photo lineup administration was deeply flawed and that the statute was "knowingly disregarded." (*Id.*)

**{¶26}** Flagg catalogues numerous ways that the statutory procedure was not followed in the Hardin County lineup: the lineup was not administered by a blind administrator; no written statement was provided to establish why a blind administrator was not used; the lineup administrator did not state that the suspect may or may not be in the lineup; the lineup administrator and another officer present

-14-

knew who the suspect was; the administrator said "this may not be his first time, he may have done this before" while conducting the lineup; the administrator instructed Marie to look through the photographs twice at the outset, though under the statute she was only supposed to look a second time at the photo lineup if she requested to do so; Marie was accompanied by her father, mother, two deputies and an intern while the test was being given.

{¶27} In addition, Flagg contends that the photos in the lineup itself were unduly suggestive as some men had facial hair and some had differently defined hairlines drastically different from Flagg's photograph. Further, Flagg argues that there was potential for misidentification in this case as there was some testimony that another individual, Jimmy Skaggs, attempted to pass fake bills at the minimart in Marion after Flagg had, and that Skaggs said the fake bill he was attempting to use had come from a man named Andy Greenwood.

{¶28} At the outset of our analysis, we emphasize that the trial court itself did not find that the photo lineup conducted in Hardin County was compliant with R.C. 2933.83; rather, the trial court stated that the photo lineup was *not* in compliance with the statute, but it was not unduly suggestive, which is what is required before suppressing a photo lineup identification. *State v. Ruff*, 1st Dist. Hamilton No. C-110250, 2012-Ohio-1910, ¶ 8 ("noncompliance with R.C. 2933.83(B) alone is insufficient to warrant suppression.")

{¶29} In our own review, we agree with the trial court that the Hardin County lineup was not compliant with R.C. 2933.83. The lineup was conducted by Detective Willoby and Deputy Carl of the Hardin County Sheriff's Office. Portions of the statute were complied with, such as using the folder system, showing the photographs one at a time, and getting Marie to sign and rate her confidence in the identification. Moreover, Detective Willoby did offer some explanation as to why a blind administrator was not used, stating that their office was small and short-staffed, that it would have been difficult (but not impossible) to get a blind administrator to assist that day, and that they wanted to do the lineup as close in time to the incident as possible. *See State v. Moon*, 2d Dist. Montgomery No. 25061, 2013-Ohio-395, ¶ 28 (finding that while being short-staffed did not make obtaining a blind administrator impractical, the absence of a blind administrator or written reasons why one was not used does not warrant suppression.) Nevertheless, there was no blind administrator per the statute, Detective Willoby did not inform the eyewitness that the suspect may or may not be in the lineup, and Detective Willoby ordered Marie to look at all the photographs twice, instead of waiting to see if she would request to do so.

{¶30} However, similar to the trial court, despite numerous failures to comply with the statutory procedure, we cannot find that the Hardin County lineup was unduly suggestive in this matter. "A lineup is unduly suggestive if it steers the

witness to one suspect, independent of the witness's honest recollection." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, ¶ 208, citing *Wilson v. Mitchell*, 250 F.3d 388, 397 (6th Cir.2001). Although it is a suppression matter, the defendant actually " 'bears the burden of showing that the identification procedure was 'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification' and that the identification itself was unreliable under the totality of the circumstances.' " *State v. Wilcoxin*, 2d Dist. Clark No. 2017-CA-58, 2018-Ohio-1322, ¶ 7, quoting *State v. Sherls*, 2d Dist. Montgomery No. 18599, 2002 WL 254144, *2 (Feb. 22, 2002), quoting *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

**{¶31}** Here, there is no indication that Detective Willoby or Deputy Carl "steered" Marie toward Flagg's photograph. In fact, Marie testified that when she looked through the photographs the first time, she was confident that Flagg was the right individual. She testified that she only looked at the photographs a second time because she was instructed to by Detective Willoby. Marie specifically testified that the officers did not influence her decision in any manner, and that her recollection was entirely independent. Marie also testified that she did not recall Detective Willoby stating that the suspect's photograph was in the lineup, or that the suspect was wanted for other similar crimes.

{¶32} Detective Willoby and Deputy Carl also testified individually that they did nothing to influence Marie's identification. They indicated that the procedure was explained and that small talk was made with Marie's father during the lineup, but they explicitly did not attempt to aid Marie in any manner.

{¶33} In addition, as to the lineup itself, Detective Willoby testified that he compiled the lineup by putting Flagg's height, eye color, hair color, weight, and race into the OLEG database, and that the database compiled five other individuals for comparison. There is no indication that Detective Willoby selected individuals different from Flagg, and in fact, the opposite is true. *See State v. Wilcoxin*, 2d Dist. Clark No. 2017-CA-58, 2018-Ohio-1322 (where defendant was only photo in lineup with a facial tattoo, specifically a teardrop, lineup still was not so impermissibly suggestive that it warranted suppression). At the very least, Flagg did not meet his burden to establish that the lineup was unduly suggestive.

{¶34} Nevertheless, even assuming *arguendo* that we found the lineup to be unduly suggestive, the next issue we would have to analyze before determining that suppression was appropriate was whether there were indications that the identification was reliable. In this case, Marie identified Flagg in the photo lineup very soon after seeing him in the store—the same day. She also testified that she remembered his eyes and lack of smile from seeing him in the store, and that she was suspicious of him because of the look of the $100 bill he provided. When Marie

first saw his photo in the lineup, she stated that she was "almost positive she recognized him." (Tr. at 278).

{¶35} Further establishing Marie's good memory, she recalled the items Flagg bought in the store, she recalled that Flagg had a woman with him, and she recalled the brief conversation she had with Flagg wherein he asked if she could make change for $100, and she said it depended on how much he bought. A significant number of the items Marie listed as having been "purchased" by Flagg were found in his house in a subsequent search. Based on Marie's testimony, her identification would appear to have some reliability.

{¶36} Finally, we would note that the trial court emphasized the officers' failure to comply with the statutory procedures to the jury in a lengthy admonishment, stating that the jury was entitled to consider that as part of evaluating the reliability of the photo lineup identification. The trial court also gave an instruction to the jury on the matter, which spanned five pages of the transcript. The jury was thus very aware of the issues regarding the photo lineup, which is precisely what R.C. 2933.83 requires when procedures were not complied with. *State v. Moon*, 2d Dist. Montgomery No. 25061, 2013-Ohio-395, ¶ 28 ("Significantly, although R.C. 2933.83(C)(1) provides that the trial court must consider non-compliance with the provisions of the statute in adjudicating a motion to suppress eyewitness identification testimony, it does *not* provide that non-compliance, by

itself, requires suppression of the testimony. In dictum, we have said that the "penalty" for failure to comply with the statute is not suppression, but the other remedies provided for in the statute.") (Emphasis sic.)

{¶37} For all of these reasons, we cannot find that the trial court erred in denying Flagg's suppression motion.[7] Therefore, his assignment of error is overruled.

*Conclusion*

{¶38} For the foregoing reasons Flagg's assignment of error is overruled and the judgment of the Marion County Common Pleas Court is affirmed.

***Judgment Affirmed***

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**

---

[7] As stated previously, Flagg conceded in his brief that the Marion County photo lineup was mostly in compliance with the statute. Even if he did challenge this issue on appeal, there is no evidence of undue influence and Sharon was familiar with Flagg from prior dealings making her identification more reliable. Nevertheless, the officer administering the Marion County photo lineup did not even know who the suspect was. The photo lineup was also put together the same way through OLEG, thus we could find no prejudicial error here.