[Cite as *State v. Crutchfield*, 2011-Ohio-5383.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                    :        APPEAL NO. C-100694
                                           TRIAL NOS. B-0903675
      Plaintiff-Appellee,        :                B-0904855

  vs.                            :

                                           *O P I N I O N*
MICHAEL CRUTCHFIELD,             :

      Defendant-Appellant.       :


Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  October 21, 2011


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *James Michael Keeling,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Christine Y. Jones,* for Defendant-Appellant.



Please note:  This case has been removed from the accelerated calendar.

**HILDEBRANDT, Judge.**

{¶1}     Defendant-appellant Michael Crutchfield appeals the judgment of the Hamilton County Court of Common Pleas convicting him of murder, attempted murder, two counts of felonious assault, with firearm specifications, and one count of having a weapon while under a disability.  He was convicted after a jury trial.

### A Cup of Liquor and the Death of an Innocent Bystander

{¶2}     This case concerns Crutchfield's alleged retaliation for the shooting of his cousin, Darwin Adams.

{¶3}     One night, Crutchfield and Adams were at a party.  Jeffrey Davis was also present at the party with his friend Eric Moore.  At some point during the course of the party, Adams and Davis got into a prolonged, heated argument over a cup of liquor.

{¶4}     Moore and Davis left the party together.  Moore testified that as they were driving on a nearby street, they had spotted Adams.  According to Moore, Davis had shot Adams, and they had fled the scene.

{¶5}     Moore and Davis were looking for a safe place to hide out after the shooting.  To that end, they contacted Damon Warner, a "bootleg" cab driver.  Warner testified that he had picked up Moore and Davis and that the pair had made numerous cellular telephone calls in search of a safe haven.  Some time past dawn, one of those calls led Warner to drive to Broadway Street in downtown Cincinnati.

{¶6}     After they had parked on Broadway, Warner and Moore saw a man peeking out several times from the breezeway of an apartment building.  Soon after, the man approached the car with a gun, firing numerous rounds through the back window.  Although the occupants of the car went unscathed, one of the stray bullets

2

struck and killed Brittany Jackson, who happened to be walking down the street as the shots were fired.

{¶7}     Warner and Moore both testified that as the shots were being fired, Moore had identified the shooter as "Keys," which was Crutchfield's nickname. Warner and Moore were later shown a photographic lineup, and they both identified Crutchfield as the assailant.

{¶8}     Crutchfield fled to Toledo, where he was arrested.

{¶9}     At trial, Crutchfield denied having participated in the shooting that had led to Jackson's death.  He testified that, at the time of the assault, he had been visiting Adams at the hospital.  He presented the testimony of several other witnesses who stated that they had seen Crutchfield at the hospital on the morning in question.

{¶10}    The jury returned guilty verdicts for murder with respect to Brittany Jackson, for attempted murder with respect to Davis, for felonious assault with respect to Moore and Warner, and for possession of a weapon while under a disability.  The trial court then sentenced Crutchfield to an aggregate prison term of 44 years to life.

### Sufficiency and Weight of the Evidence

{¶11}    In his first three assignments of error, Crutchfield argues that his convictions were based on insufficient evidence and were against the manifest weight of the evidence.  We address the assignments together.

{¶12}    In reviewing the sufficiency of the evidence to support a conviction, the relevant inquiry for the appellate court "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *State v. Waddy*

(1992), 63 Ohio St.3d 424, 430, 588 N.E.2d 819. To reverse a conviction on the manifest weight of the evidence, a reviewing court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice in finding the defendant guilty. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541.

{¶13} The murder statute, R.C. 2903.02(A), provides that "[n]o person shall purposely cause the death of another * * *." The attempt statute, R.C. 2923.02(A), states that "no person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." R.C. 2903.11(A)(2), governing felonious assault, provides that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."

{¶14} In this case, the convictions were proper. The state presented ample evidence that Crutchfield had purposely fired shots at the car occupied by Warner, Moore, and Davis. One of those shots caused the death of Brittany Jackson. And it was undisputed that, at the time of the shooting, Crutchfield was under a legal disability. Although Crutchfield emphasizes his alibi evidence and the alleged inconsistencies or deficiencies in the state's identification evidence, we cannot say that the jury lost its way in finding him guilty.

{¶15} Crutchfield also cites what he claims to be an inconsistency in the jury's verdicts. He notes that the jury returned a guilty verdict for attempted murder

only as to Davis, whereas it returned guilty verdicts for felonious assault as to the other two occupants of the car.

{¶16}     We find no inconsistency in the verdicts.  The evidence indicated that Crutchfield bore a grudge against Davis for the shooting of Darwin Adams.  The jury could have reasonably concluded that the grudge had been the motive for Crutchfield to attempt to kill Davis, but that the animus to kill simply had not existed for the other two men.  Accordingly, we overrule the first, second, and third assignments of error.

**Sentencing**

{¶17}     In his fourth assignment of error, Crutchfield contends that the trial court imposed an excessive aggregate sentence.

{¶18}     Under *State v. Foster,* 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, a trial court has full discretion to impose a sentence within the applicable statutory range.  Id., paragraph seven of the syllabus.  A reviewing court must first determine whether the sentence was clearly and convincingly contrary to law.  *State v. Kalish,* 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶14-17.  If the sentence was not contrary to law, the appellate court then reviews the sentence under an abuse-of-discretion standard.  Id.  Where the trial court does not explicitly put on the record its consideration of applicable sentencing statutes, it is nonetheless presumed that the court properly considered those statutes.  Id. at fn. 4.

{¶19}     In the case at bar, it is undisputed that the sentences were within the statutory ranges, and we find no abuse of discretion.  Crutchfield had a deplorable criminal record that included convictions for numerous felonies, and in this case he had engaged in a revenge-inspired shooting spree that had resulted in

5

the death of an innocent bystander. Under these circumstances, the trial court's sentence was fully justified, and we overrule the fourth assignment of error.

### Prosecutorial Misconduct

{¶20} In his fifth assignment of error, Crutchfield argues that he was prejudiced by improper comments by the prosecutor during closing arguments.

{¶21} To obtain a reversal on the ground of improper remarks made during closing argument, the defendant must demonstrate not only that the comments were improper, but also that they deprived the defendant of a fair trial. *State v. Seay,* 1st Dist. No. C-090233, 2010-Ohio-896, ¶23.

{¶22} Here, Crutchfield has failed to demonstrate any impropriety. Crutchfield argues that the prosecutor attacked and made derogatory remarks about defense counsel. But our review of the record reveals that any comments directed toward defense counsel were made to rebut counsel's allegations that the state had manipulated the evidence to secure a conviction. We find nothing improper in the state's response, and we overrule the fifth assignment of error.

### Motion to Suppress Statements

{¶23} In the sixth assignment of error, Crutchfield contends that the trial court erred in overruling his motion to suppress statements he had made to the officers following his arrest. He argues that the investigating officers had interrogated him after he had invoked his right to counsel and that any statements he made after invoking his rights were inadmissible.

{¶24} Crutchfield is correct that statements made in response to interrogation after the invocation of the right to counsel are generally inadmissible. See *Edwards v. Arizona* (1981), 451 U.S. 477, 485, 101 U.S. 1880; *State v. Neely,* 161 Ohio App.3d 99, 2005-Ohio-2342, 829 N.E.2d 718, ¶29. But in this case, the record

indicates that there was no violation of Crutchfield's rights. Although there was some confusion during the hearing on the motion to suppress concerning the timing of Crutchfield's request for counsel, the state demonstrated that the officers had respected the request and had appropriately ceased their questioning. We overrule the sixth assignment of error.

### Motion to Suppress Identification

{¶25}    In his seventh and final assignment of error, Crutchfield argues that the trial court erred in overruling his motion to suppress the out-of-court identification.

{¶26}    To suppress identification testimony, the trial court must find that the identification procedure "was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Neil v. Biggers* (1972), 409 U.S. 188, 197, 93 S.Ct. 375, quoting *Simmons v. United States* (1968), 390 U.S. 377, 384, 88 S.Ct. 967; *State v. Green* (1996), 117 Ohio App.3d 644, 652, 691 N.E.2d 316. "Reliability is the linchpin in determining the admissibility of identification testimony." *Manson v. Brathwaite* (1977), 432 U.S. 98, 114, 97 S.Ct. 2243. Thus, even if the identification procedure was suggestive, so long as the challenged identification was reliable, it is admissible. *Seay,* supra, at ¶29.

{¶27}    In the case at bar, the trial court did not err in denying the motion. The investigating officers followed established procedures in conducting the photographic lineup, and the officers did nothing to suggest that Crutchfield was the perpetrator. Moore had known Crutchfield prior to the shooting, and both he and Warner readily identified Crutchfield as the assailant. Under these circumstances, the identification was reliable, and we accordingly overrule the seventh assignment of error.

## Conclusion

{¶28}     The judgment of the trial court is affirmed.

Judgment affirmed.

**DINKELACKER, P.J.,** and **SUNDERMANN, J.,** concur.

Please Note:

The court has recorded its own entry this date.